STATE of Wisconsin, Plaintiff-Respondent,

v.

Andrae D. HOWELL, Defendant-Appellant.†

Court of Appeals

*No. 2005AP731–CR. Submitted on briefs October 11, 2005.
—Decided August 31, 2006.*

2006 WI App 182

(Also reported in 722 N.W.2d 567.)

† Petition to review granted 12/6/06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. LUNDSTEN, P.J. Andrae Howell complains that the circuit court wrongly denied his plea withdrawal motion without an evidentiary hearing. After he was convicted and sentenced, Howell filed a motion alleging that his plea was unknowingly entered because he did not understand what the State needed to prove to show that he acted as a party to a crime. Howell's motion requested an evidentiary hearing, but did not allege a plea colloquy defect, therefore, did not seek to shift the burden of proof to the State under *Bangert*.[1] Instead, Howell's motion contained several factual allegations that, he argues, are sufficient to entitle him to an evidentiary hearing at which he would have the burden of proof. Non-*Bangert* plea withdrawal motions such as this have long been assessed under what is commonly referred to as the *Nelson* test or the *Bentley* test or, as we do here, the *Nelson/Bentley* test.[2]

¶ 2. Howell first argues that his plea withdrawal motion should be analyzed under a hybrid test that is a

[1] *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). We use the term "*Bangert* violation" as shorthand for a violation of any statutorily or judicially mandated plea hearing requirement. Similarly, we use the terms "*Bangert* arguments" and "*Bangert* motions" to refer to arguments and motions involving an alleged *Bangert* violation. Howell's motion is a non-*Bangert* motion because it does not allege that the circuit court failed to comply with a mandatory duty during the plea colloquy.

[2] *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996); *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972). We use

383

combination of the tests applied to *Bangert* and non-*Bangert* motions. His argument is complicated. For now, it must suffice to say that Howell asserts his hybrid test is needed because his case represents a class of cases that do not involve an actual *Bangert* violation, but are nonetheless "akin" to *Bangert*.[3]

¶ 3.   In the alternative, Howell argues that, under the *Nelson/Bentley* test, his motion was sufficient to require an evidentiary hearing because he alleged non-conclusory facts that, if true, entitled him to relief.

¶ 4.   We reject both arguments and affirm the circuit court's denial of Howell's plea withdrawal motion without an evidentiary hearing.

## *Background*

¶ 5.   The victim in this case is a man named Marcus Pearson. Pearson had a relationship with Howell's sister, April. Because of a dispute between Pearson and April, Howell feared that Pearson would hurt April. According to Howell, he was willing to "physically confront Mr. Pearson if necessary." On February 8, 2004, Howell, along with a cousin and a different sister, got into a car driven by that sister. These three people located Pearson. Howell and his cousin got out of the car and approached Pearson.

---

terms such as "*Nelson/Bentley* arguments" and "*Nelson/Bentley* motions" to refer to arguments and motions that do not allege a *Bangert* violation.

[3] We acknowledge that Howell talks in terms of his case being "akin" to *State v. Hampton*, 2004 WI 107, 274 Wis. 2d 379, 683 N.W.2d 14. In this respect, however, his argument is not based on *Hampton* in particular, but rather on the fact that *Hampton* involves an alleged *Bangert* violation. Thus, clarity is served by recasting this part of Howell's argument as asserting that his facts are "akin" to *Bangert*.

Pearson was shot twice. One bullet fractured one of Pearson's fingers and another fractured a leg bone.

¶ 6. The State charged Howell with first-degree reckless injury in a complaint that alleged Howell was the shooter. On a date originally set for trial, new information came to light and the case was set over. Approximately one month later, the prosecutor moved to amend the complaint to add party-to-a-crime liability. The amendment was based on the possibility that the evidence at trial might show that Howell's cousin, not Howell, was the shooter. The court permitted the amendment and that same day Howell entered a guilty plea to the amended charge. Judge Richard Sankovitz presided over Howell's plea hearing.

¶ 7. Howell was subsequently sentenced by Judge Jean DiMotto. Judge DiMotto imposed seven years of initial confinement followed by seven years of extended supervision.

¶ 8. After sentencing, Howell filed a motion seeking plea withdrawal. In that motion, Howell asserted that his plea was not knowingly entered because he did not understand party-to-a-crime liability. Howell's motion contained several allegations, discussed below, purporting to support his general claim. Judge DiMotto denied the motion without a hearing.

## Discussion

¶ 9. Howell asserts that the circuit court erred by denying his post-sentencing plea withdrawal motion without holding an evidentiary hearing. Howell's motion asserted that his plea was not knowing because he did not understand that a person's mere presence at a shooting, combined with that person's failure to prevent the shooting, is not sufficient to prove party-to-a-

crime liability. Howell's motion did *not* assert that his plea colloquy was defective within the meaning of *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). Thus, the motion did *not* seek to shift the burden of proof to the State per the *Bangert* procedure. In his initial appellate briefing, Howell relied on *Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and argued that he was wrongly denied an evidentiary hearing because, under the *Nelson* standard, his motion contained non-conclusory allegations that, if true, entitled him to plea withdrawal.

¶ 10. We previously issued a decision in this appeal concluding that Howell's plea withdrawal motion was properly denied without a hearing because the allegations in his motion were conclusory under the *Nelson/Bentley* test. Thereafter, Howell's counsel filed a motion for reconsideration, arguing that our decision was in conflict with the supreme court's decision in *State v. Hampton,* 2004 WI 107, 274 Wis. 2d 379, 683 N.W.2d 14, a *Bangert* plea withdrawal case. We withdrew our opinion with an order acknowledging that we should have, at a minimum, addressed language in *Hampton* that is arguably inconsistent with applying the *Nelson/Bentley* test to the allegations of misunderstanding in Howell's motion. The parties filed supplemental briefs, and we now issue this revised opinion addressing and rejecting Howell's new argument based on the *Bangert* line of cases and especially *Hampton.*[4]

[4] It remains clear that Howell is not alleging a *Bangert* plea colloquy defect. We plainly stated in our withdrawn opinion that Howell's plea withdrawal motion neither alleged a *Bangert* violation nor sought the benefit of *Bangert* burden shifting. In supplemental briefing, Howell has not disputed our characterizations of either his circuit court motion or his initial argu-

¶ 11. Howell's new argument is not easily summarized, but it goes something like this:

> 1) The essence of a *Bangert* plea withdrawal motion is that it asserts the existing record shows the circuit court said or failed to say something that arguably contributed to a defendant's alleged misunderstanding.
>
> 2) Therefore, if a defendant is able to point to something in a plea hearing transcript that may have contributed to his or her alleged misunderstanding, then, as with *Bangert* motions, even a conclusory allegation of a misunderstanding should be deemed sufficient to compel an evidentiary hearing, albeit a non-*Bangert* plea withdrawal hearing at which the defense has the burden of proof.

Applied here, Howell contends that he is entitled to an evidentiary hearing because his motion (1) identified plea hearing statements by the court and the prosecutor that could have contributed to Howell's alleged misunderstanding about party-to-a-crime liability and (2) alleged Howell did not understand party-to-a-crime liability when he entered his plea. A key component in this argument is that an evidentiary hearing was required here even if Howell's motion contained only a conclusory allegation that he misunderstood party-to-a-crime liability.

¶ 12. Howell's argument is based on two assumptions. First, that in *Hampton* the supreme court held that conclusory allegations of misunderstanding are sufficient in the context of a non-*Bangert* motion assessed under the *Nelson/Bentley* test. Second, that it is possible to define a category of flawed plea hearings

---

ments on appeal. If Howell means to shift course and allege a *Bangert* violation, he has failed to present a developed argument on that issue.

that do not involve an actual *Bangert* violation, but do contain statements by the court (or perhaps others) that could have contributed to a defendant's alleged misunderstanding.

¶ 13. Before explaining why we disagree with both of Howell's assumptions, we think it helpful to summarize the difference between a *Bangert* plea withdrawal argument and a *Nelson/Bentley* plea withdrawal argument.

### A. Bangert and Nelson/Bentley

¶ 14. In the 1986 *Bangert* decision, the supreme court adopted a new procedure designed to encourage circuit court compliance with statutorily and judicially mandated plea requirements. *See Bangert*, 131 Wis. 2d at 275; *see also Hampton*, 274 Wis. 2d 379, ¶ 65. Under the newly created *Bangert* procedure, if a defendant files a plea withdrawal motion that (1) identifies a failure by the circuit court to comply with Wis. Stat. § 971.08 (2003–04)[5] or a court-mandated plea hearing procedure, and (2) alleges that the defendant did not understand the information at issue, then the burden shifts to the State to show by clear and convincing evidence that the plea was knowingly and voluntarily entered.[6] *Bangert*, 131 Wis. 2d at 274–75. Notably, the

---

[5] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[6] In this decision, we use "knowing" and its variations as including both the concepts of knowledge *and* understanding. This shorthand is in keeping with the common use of the term and at least one supreme court opinion. *See State v. Brandt*, 226 Wis. 2d 610, 618 n.5, 594 N.W.2d 759 (1999) ("The State is then given the opportunity to show by clear and convincing evidence

second *Bangert* prong is satisfied by a conclusory allegation that the defendant did not know or understand. *Hampton*, 274 Wis. 2d 379, ¶ 57.

¶ 15.   The two *Bangert* prongs constitute a prima facie showing that the plea was unknowingly entered. *See State v. Plank*, 2005 WI App 109, ¶ 6, 282 Wis. 2d 522, 699 N.W.2d. 235, *review denied*, 2005 WI 136, 285 Wis. 2d 630, 703 N.W.2d 379 (No. 2004AP2280–CR); *State v. Jipson*, 2003 WI App 222, ¶ 9, 267 Wis. 2d 467, 671 N.W.2d 18. If a defendant's motion makes this prima facie *Bangert* showing, the circuit court must hold an evidentiary hearing at which the burden shifts to the State to prove by clear and convincing evidence that the plea was knowingly entered. *State v. Brown*, 2006 WI 100, ¶¶ 36, 40, 293 Wis. 2d 594, 716 N.W.2d 906; *Bangert*, 131 Wis. 2d at 274–75. To meet its burden, the State may use the existing record and may "examine the defendant or defendant's counsel to shed light on the defendant's understanding or knowledge." *Bangert*, 131 Wis. 2d at 275. If the State fails to meet this burden, plea withdrawal is required.

¶ 16.   But before *Bangert*, and to this day, there is a different route to plea withdrawal. Regardless whether plea colloquies contain *Bangert* violations, defendants are entitled to post-sentencing plea withdrawal if they can show by clear and convincing evidence that their plea was not knowingly or voluntarily

that the defendant nevertheless knowingly entered the plea."). We caution, however, that there may be situations in which it is alleged that, although a defendant might know information, he or she does not understand it. *See Bangert*, 131 Wis. 2d at 269. In such cases, writers should clearly state that they are discussing understanding as a concept distinct from mere knowledge.

entered. *See State v. Reppin*, 35 Wis. 2d 377, 384–86, 151 N.W.2d 9 (1967); *State v. Giebel*, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (Ct. App. 1995). That is, regardless whether courts comply with mandated plea hearing requirements, defendants are entitled to plea withdrawal if *they* can prove that their plea was unknowingly or involuntarily entered. When a defendant files a motion containing a non-*Bangert* plea withdrawal argument, and requests an evidentiary hearing, the *Nelson/Bentley* test is used to determine whether a hearing is required.

¶ 17. The *Nelson/Bentley* test asks whether a motion alleges "facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record [otherwise] conclusively demonstrates that the defendant is not entitled to relief." *State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433 (paraphrasing *Nelson*, 54 Wis. 2d at 497, and *State v. Bentley*, 201 Wis. 2d 303, 309–10, 548 N.W.2d 50 (1996)); *see also State v. Love*, 2005 WI 116, ¶ 26, 284 Wis. 2d 111, 700 N.W.2d 62. A motion requesting an evidentiary hearing must contain non-conclusory allegations, that is, allegations that " 'allow the reviewing court to meaningfully assess [the defendant's] claim.' " *Allen*, 274 Wis. 2d 568, ¶ 21 (quoting *Bentley*, 201 Wis. 2d at 314).

¶ 18. The *Nelson/Bentley* test strikes a balance. Defendants need not detail all of the evidence they would present at an evidentiary hearing, but they may not "stand on conclusory allegations, hoping to supplement them at a hearing." *Levesque v. State*, 63 Wis. 2d 412, 421, 217 N.W.2d 317 (1974). The reason the supreme court requires more than conclusory legal or factual allegations was first explained in *Levesque*, and then repeated in *Bentley*:

390

> "With the vast amount of work . . . the trial courts have with petitions for postconviction relief, some of them duplications, many of them filed with only a last hope or chance, and some of them filed without factual basis, there is need for a prescreening procedure which is fair to the petitioner and to the courts. If there is merit in the facts, it should be an easy matter and a prime requisite to state those facts in the petition so they can be evaluated at the commencement of the proceeding."

*Bentley*, 201 Wis. 2d at 317–18 (quoting *Levesque*, 63 Wis. 2d at 421–22). Thus, the supreme court recognized the need to avoid hearings that amount to nothing more than fishing expeditions for defendants.

¶ 19. In *Allen*, the supreme court provided additional guidance. *See Allen*, 274 Wis. 2d 568, ¶¶ 12–24. The court explained that a motion sufficient to meet the *Nelson/Bentley* standard should "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *Allen*, 274 Wis. 2d 568, ¶ 23.[7]

■

¶ 20. Although courts often speak in terms of *Bangert* motions and *Nelson/Bentley* motions, the two are not mutually exclusive. A defendant may, in the same physical motion, request a plea withdrawal hearing based on an alleged *Bangert* violation and, in the alternative, assert that a hearing must be held because the motion contains allegations that are sufficient under the *Nelson/Bentley* test. When motions contain these alternatives, they must be assessed, respectively, under *Bangert* and under *Nelson/Bentley*. Moving par-

---

[7] Of course, these are general principles, not bright-line rules, and there has been much litigation over what is and is not "conclusory." As we shall see, it is the application of the *Nelson/Bentley* test that is at the heart of this case.

ties would be wise to be clear about which argument is being made, or that both are being made.[8]

## B. The Hampton Decision

¶ 21. In this section, we address and reject Howell's assertion that in *Hampton* the supreme court held that a conclusory allegation of a misunderstanding is sufficient for purposes of a non-*Bangert* plea withdrawal motion, that is, a motion assessed under the *Nelson/Bentley* test.

¶ 22. In *Hampton*, the court addressed whether a plea withdrawal motion was sufficient under the two-pronged *Bangert* test. This means, of course, that Hampton alleged a plea colloquy defect, in other words, a *Bangert* violation. The alleged *Bangert* violation was

[8] We note that non-*Bangert* plea withdrawal motions come in several stripes. Indeed, *Nelson* and *Bentley* themselves differ in that *Bentley* involves the additional complexity of an allegation of ineffective assistance of counsel. *Bentley*, 201 Wis. 2d at 306–07. Moreover, plea withdrawal motions are but one type of motion assessed under the *Nelson/Bentley* standard. The *Nelson/Bentley* test is used in its pure form, or in a slightly modified form, in a variety of situations to determine whether an evidentiary hearing is required. *See, e.g., State v. Samuel*, 2002 WI 34, ¶¶ 8, 33–35, 47, 252 Wis. 2d 26, 643 N.W.2d 423 (need for pretrial suppression hearing); *State v. Velez*, 224 Wis. 2d 1, 4, 13–14, 589 N.W.2d 9 (1999) (allegation that State deliberately delayed charging defendant to avoid juvenile court jurisdiction); *State ex rel. Reimann v. Circuit Court for Dane County*, 214 Wis. 2d 605, 611, 618–19, 571 N.W.2d 385 (1997) (need for John Doe proceeding); *State v. Reynolds*, 2005 WI App 222, ¶¶ 1, 7–8, 15, 287 Wis. 2d 653, 705 N.W.2d 900 (allegation that counsel rendered ineffective assistance at trial); *State v. Pharm*, 2000 WI App 167, ¶¶ 1, 8, 27, 238 Wis. 2d 97, 617 N.W.2d 163 (allegation that counsel rendered ineffective assistance during post-commitment Wis. Stat. ch. 980 trial).

the circuit court's failure to personally advise Hampton that the court was not bound by the terms of the plea agreement, including the prosecutor's recommendation. *Hampton*, 274 Wis. 2d 379, ¶¶ 2, 20, 32, 38. The *Hampton* court agreed with Hampton that such a requirement exists and, because it was undisputed that the circuit court failed to comply with the requirement, *id.*, ¶ 15, Hampton satisfied the first prong of *Bangert*: he demonstrated a *Bangert* violation.

¶ 23. The *Hampton* court then turned its attention to the second prong of *Bangert*—the allegation in the plea withdrawal motion that Hampton did not understand that the court was not bound by the agreement. Although *Bangert* itself appears to require only a bald allegation that the defendant did not understand, the State asked the supreme court to require more in *Bangert* motions. The State urged the court to apply the *Nelson/Bentley* non-conclusory pleading requirement to the portion of Hampton's *Bangert* motion alleging that Hampton misunderstood. *Hampton*, 274 Wis. 2d 379, ¶¶ 50–51. The supreme court rejected the State's argument, pointing out several differences between motions assessed under *Bangert*, and non-*Bangert* motions assessed under *Nelson/Bentley*. *Hampton*, 274 Wis. 2d 379, ¶¶ 50–65.

¶ 24. One of the differences the *Hampton* court identified as a reason not to apply the *Nelson/Bentley* non-conclusory pleading requirement to allegations of a misunderstanding in *Bangert* motions gives rise to Howell's argument here. The supreme court said:

> In addition [to demonstrating a *Bangert* defect in the plea colloquy], the defendant must allege that he did not in fact understand [the information/explanation at issue] because that information/explanation was not provided. We think a [*Bangert*] motion of this nature

*passes the test of Nelson and Bentley*: a motion to withdraw a plea that alleges facts which, if true, would entitle the defendant to relief. The allegation that the defendant did not understand is, admittedly, conclusory; but the allegation raises a question of fact and perhaps law that requires resolution.

The allegation that a defendant did not understand something is qualitatively different from the allegation of a legal conclusion such as "counsel's performance was deficient and resulted in prejudice to the defendant," [the allegation in *Bentley*] or "the defendant's plea was not voluntary." [one of the allegations in *Nelson*] These [latter] legal conclusions cry out for supporting facts, and these supporting facts must be alleged to satisfy the defendant's burden for an evidentiary hearing.

*Hampton*, 274 Wis. 2d 379, ¶¶ 57–58 (emphasis added; original emphasis deleted). Read carefully and, we believe, as the court intended, the above language applies only to *Bangert* motions. But Howell contends this was the *Hampton* court's way of saying that conclusory allegations of misunderstanding are sufficient in the context of a non-*Bangert* motion assessed under the *Nelson/Bentley* test. We disagree for the following four reasons.[9]

---

[9] It appears the *Hampton* court is suggesting that, unlike *Bangert* plea withdrawal motions, non-*Bangert* motions do not involve allegations that a defendant did not understand something necessary to a valid plea. However, the same misunderstandings are often alleged in both *Bangert* and *Nelson/Bentley* plea withdrawal motions. For example, regardless of the sufficiency of the plea colloquy—i.e., regardless whether there is an alleged *Bangert* violation—a defendant might assert in a plea withdrawal motion that he or she did not understand one of the elements of a crime. What distinguishes a *Bangert* motion is not the information allegedly misunderstood, but rather whether

¶ 25.   First, the language must be read in context. A careful reading of paragraphs 50 to 65 in *Hampton* reveals that the court intended only to reject the State's argument that the *Nelson/Bentley* non-conclusory pleading requirement should be applied to *Bangert* plea withdrawal motions. The *Hampton* court did not say that in a non-*Bangert* context a conclusory allegation of a misunderstanding is sufficient.

¶ 26.   Second, the supreme court created the *Bangert* procedure—permitting conclusory allegations of misunderstanding and shifting the burden of proof to the State when defendants demonstrate a *Bangert* violation—as a means of prompting circuit courts to follow mandated plea colloquy requirements and encouraging prosecutors to assist courts in doing so. *See Bangert*, 131 Wis. 2d at 275. When circuit courts *comply* with all mandatory requirements, the very reason the supreme court created the *Bangert* exception to the general *Nelson/Bentley* non-conclusory pleading requirement does not exist.

¶ 27.   Third, permitting conclusory allegations of a misunderstanding to suffice is antithetical to the nature of non-*Bangert* plea withdrawal hearings. In the non-*Bangert* context, where defendants will have the burden of proof if an evidentiary hearing is held, the reason defendants must meet the *Nelson/Bentley* pleading standard is to demonstrate to busy trial courts that there is a good reason to hold a hearing. *See Levesque*, 63 Wis. 2d at 421–22. That is the very reason conclusory allegations are insufficient under *Nelson/Bentley*. Indeed, in both *Nelson* and *Levesque* the supreme court held conclusory allegations of a misunderstanding were

the burden of proof on the topic should shift to the State because of a plea colloquy defect.

395

insufficient to require an evidentiary hearing. *Nelson*, 54 Wis. 2d at 493, 494–95, 497–98 (plea withdrawal motion properly denied without a hearing because motion "presented only [conclusory] allegations," including the conclusory allegations that plea was entered without "a full understanding of the consequences" of the plea and in "ignorance"); *Levesque*, 63 Wis. 2d at 418–19, 421–22 (plea withdrawal motion, alleging defendant did not "understand the proceedings against him due to a mental disease or a mental defect," was properly denied without a hearing "in view of the lack of facts alleged in the motion").

¶ 28. Finally, the supreme court's just-issued *Brown* decision again emphasizes the difference between *Bangert* motions and *Nelson/Bentley* motions:

> When the defendant files a dual purpose motion—that is, a *Bangert* motion combined with a motion that alleges ineffective assistance of counsel or some other problem affecting the plea that is extrinsic to the plea hearing record [i.e., a *Nelson/Bentley* motion]—the court should make an initial ruling on whether an evidentiary hearing is required and, if it is, what the hearing will address. It must be remembered that when the defendant makes the type of motion discussed in *Bentley*, which requires testimony or the examination of evidence outside the existing record, the defendant is entitled to an evidentiary hearing only if his postconviction motion alleges facts that, if true, would entitle him to relief. "To ask the court to examine facts outside the record in an evidentiary hearing requires a particularized motion with sufficient supporting facts to warrant the undertaking." In addition, the defendant maintains the burden of proof in a *Bentley*-type hearing and the facts adduced must show manifest injustice by clear and convincing evidence before the defendant may withdraw his plea.

396

*Brown*, 293 Wis. 2d 594, ¶ 42 (citations omitted). We acknowledge that in this passage the supreme court refers only to *Bentley*, an ineffective-assistance-based plea withdrawal motion case. But the court also expressly refers to motions alleging "ineffective assistance of counsel *or some other problem affecting the plea* that is extrinsic to the plea hearing record," in which "the defendant maintains the burden of proof," *Brown*, 293 Wis. 2d 594, ¶ 42 (emphasis added), a clear reference to all *Nelson/Bentley* plea withdrawal motions.

¶ 29.    Thus, although there may be some ambiguity in *Hampton*, we are satisfied that it cannot reasonably be read as holding that conclusory allegations of a misunderstanding meet the *Nelson/Bentley* test in a non-*Bangert* context.

## C. Howell's Proposed Hybrid Test

¶ 30.    In this section, we address and reject the proposition that it is possible to define a category of flawed plea hearings that do not involve an actual *Bangert* violation, but do contain statements by the court (or perhaps others) that could have contributed to a defendant's alleged misunderstanding.

¶ 31.    Howell's plea withdrawal motion did not allege a *Bangert* violation. There is nothing in his motion suggesting that it is anything other than a request for a hearing at which Howell would have the burden of proof, that is to say, a *Nelson/Bentley* motion analyzed under the *Nelson/Bentley* test. Howell, however, now argues that a new hybrid test should be applied to motions like his.

¶ 32.    Howell's argument is this. The essence of a *Bangert* plea withdrawal motion is that it alleges the record shows the circuit court said or failed to say

something that arguably contributed to a defendant's alleged misunderstanding. Therefore, if a defendant identifies something in the record that may have contributed to his or her alleged misunderstanding, then, as with *Bangert*-type motions, even conclusory allegations of a misunderstanding should be deemed sufficient to compel an evidentiary hearing. Applying his proposal here, Howell contends that he is entitled to an evidentiary hearing, albeit a hearing at which *he has the burden of proof,* because (1) his motion identified plea hearing statements by the court and the prosecutor that could have contributed to his alleged misunderstanding about party-to-a-crime liability, and (2) he alleged in his motion that he did not understand party-to-a-crime liability when he entered his plea.

¶ 33. If we adopted Howell's proposal, there would be three approaches to assessing whether a plea withdrawal motion may be denied without an evidentiary hearing: the *Bangert* test, the *Nelson/Bentley* test, and a new test combining the first two. This hybrid test would apply when a plea colloquy complies with *Bangert* and its progeny, yet still arguably contributes to a misunderstanding.[10] We conclude that this third approach is unworkable and unnecessary. It is unworkable because there is no means of consistently identifying when a colloquy falls short of a *Bangert* violation

---

[10] According to Howell, the reason we should apply his hybrid test here is the circuit court's alleged failure to speak about party-to-a-crime liability in terms so clear that there could be no misunderstanding. This failing included, for example, the court stating that the amendment to the information reflected "the prospect that at trial the evidence might show that Mr. Howell didn't pull the trigger, but that he assisted people in putting the victim in a place where [the victim] could be shot by somebody else."

but still contributes to an alleged misunderstanding. It is unnecessary because existing law provides defendants like Howell a means of obtaining meaningful review by the circuit court of the validity of his or her plea. In the absence of a *Bangert* violation, so long as the existing record does not conclusively demonstrate that the plea was valid, a defendant is entitled to an evidentiary hearing if he or she files a motion offering a plausible reason for why the plea was unknowingly or involuntarily entered and providing supporting non-conclusory factual allegations regarding the evidence he or she is prepared to present. *See Bentley*, 201 Wis. 2d at 309–11; *Nelson*, 54 Wis. 2d at 497–98.

### D. Application Of Nelson/Bentley To Howell's Motion

¶ 34. Having rejected Howell's argument that our withdrawn decision was in conflict with *Hampton*, and having reaffirmed that Howell's non-*Bangert* plea withdrawal motion should be assessed under the *Nelson/Bentley* test, we now apply that test. The *Nelson/Bentley* question at issue is whether Howell's allegations permit a meaningful assessment of his claim, or are instead conclusory allegations such that his motion could be denied without an evidentiary hearing. *See Allen*, 274 Wis. 2d 568, ¶ 21; *Bentley*, 201 Wis. 2d at 314.

¶ 35. It bears repeating that Howell does not argue that he mistakenly thought party-to-a-crime liability applies if he approached the victim with his cousin *after* learning that his cousin was armed with a gun. Howell effectively concedes that would not have been a mistaken belief when he writes in his appellate brief: "[W]hen people knowingly come with guns, one can reasonably infer the intent to help each other if there is a shooting . . . ."

399

¶ 36. Therefore, Howell's challenge hinges on the following question: Did Howell allege sufficient facts in his postconviction motion to compel an evidentiary hearing on whether, at the time he entered his plea, he acted under the mistaken belief that his presence at the shooting, as a mere witness without knowledge that his cousin approached the victim while armed, and his failure to stop the shooting, were sufficient to support party-to-a-crime liability? For the reasons below, we conclude the answer is no.

¶ 37. Howell's post-sentencing motion asserts that he did not understand that his mere presence at the shooting and his failure to stop the shooting were not sufficient to create party-to-a-crime liability. According to Howell, if he had understood this fact, he would not have entered his guilty plea. Howell's motion provided the following six items in support of his general assertion:

1. Howell acknowledged that he knew the party-to-a-crime allegation was added to his charge because the prosecutor might be able to show that Howell assisted in putting Pearson in danger, but Howell claimed the reason he entered his plea was his mistaken belief that his mere presence at the shooting and his failure to prevent it constituted sufficient intentional assistance for purposes of party-to-a-crime liability.

2. Howell asserted that his mistaken belief was reinforced at the plea hearing when the prosecutor said there were two possibilities regarding what the State could prove at trial, one being that Howell's cousin was the shooter and "[Howell] was there with him, observed him with the gun as they got out of the car and would have approached [Pearson] in this situation."

400

3. Howell asserted that none of the statements made at the plea hearing indicated that simply failing to act to prevent the shooting was not sufficient to support party-to-a-crime liability.

4. Howell asserted that he would not have pled guilty had he realized "that his mere presence was not enough" because he first learned his cousin had a gun when he saw his cousin raise the gun and shoot it.

5. Howell acknowledged that, at sentencing, his trial counsel told the court that Howell "admitted a role . in arranging for that firearm to be present," but Howell asserted he never said any such thing.

6. Howell asserted that, "based" on an out-of-court explanation of the term "party to a crime" by his trial counsel, he believed he was guilty of first-degree reckless injury as a party to a crime because he was present at the shooting and did not prevent it.

We conclude that these assertions, individually and collectively, are conclusory within the meaning of *Bentley* because they do not "allow the reviewing court to meaningfully assess [Howell's] claim." *See Bentley*, 201 Wis. 2d at 314.[11]

¶ 38. The first item is Howell's assertion that, although he knew the party-to-a-crime allegation was added because the prosecutor might be able to show that Howell assisted in putting Pearson in danger, he

---

[11] Howell's motion asserts several other factual details. We have reviewed these other details, but none arguably support his general assertion that at the time he entered his plea he did not understand that his mere presence at the shooting and his failure to stop the shooting were not sufficient to create party-to-a-crime liability.

nonetheless mistakenly believed his mere presence and his failure to prevent the shooting were sufficient assistance for purposes of party-to-a-crime liability. This is a textbook example of a conclusory allegation. It provides no facts explaining why Howell might have misunderstood.

¶ 39. Turning to the second item, Howell's logic is demonstrably faulty. Howell asserts that his alleged mistaken belief was reinforced at the plea hearing when the prosecutor said that one of the possible reasons Howell was liable was that "[Howell] was there with [his cousin], observed [his cousin] with the gun as they got out of the car and would have approached [Pearson] in this situation." At that point in the plea hearing, the court asked if it could accept those facts as true. Howell's counsel said that those "are the facts upon which Mr. Howell has indicated his guilt to me as well." Howell's counsel then asked Howell if that was correct, and Howell answered, "Yes." Thus, this part of the transcript shows Howell *agreeing* that he *knew* his cousin had a gun as the two men got out of the car, *before* approaching the victim on foot. Thus, both the prosecutor's statement and Howell's admission are completely consistent with Howell's guilt as an aider and abettor.

¶ 40. The third item is Howell's assertion that none of the statements made at the plea hearing *communicate the idea that merely failing to act to* prevent a shooting is not sufficient to support party-to-a-crime liability. We disagree with this characterization of the plea hearing. Although the circuit court did not define the word "assist," most of the statements made at the hearing in that regard indicated that Howell's participation was in fact active. When the circuit court asked if it would "be fair to state that the [party-to-a-

402

crime] amendment to the information comprises the prospect that at trial the evidence might show that Mr. Howell didn't pull the trigger, but that he assisted people in putting [Pearson] in a place where he could be shot by somebody else," Howell responded, "Yes." Later, the court explained to Howell that the "State would have to prove either that you were the person who did all those things or that you intentionally assisted someone else who was doing those things, *knowing what they were doing*" (emphasis added). The court asked Howell if he understood that, and Howell again answered, "Yes." Finally, we have already recounted that Howell admitted at the plea hearing that he saw that his cousin had a gun as they got out of the car, yet Howell still approached Pearson with his cousin. At no time during the plea hearing did anyone say that mere presence constituted assistance for purposes of party-to-a-crime liability.

¶ 41. The fourth item is Howell's assertion that he would not have pled guilty had he realized "that his mere presence was not enough" because he first learned his cousin had a gun when he saw his cousin raise the gun and shoot it. Stated differently, Howell is saying that he must have mistakenly thought his mere presence was sufficient for liability because he obviously would not have pled guilty knowing he had no involvement in the shooting other than being a witness to it.[12]

[12] Howell is not required to show that a misunderstanding *affected* his decision to enter his plea. In *State v. Harden*, 2005 WI App 252, ¶ 5, 287 Wis. 2d 871, 707 N.W.2d 173, we explained that in *State v. Bartelt*, 112 Wis. 2d 467, 334 N.W.2d 91 (1983), the supreme court rejected the argument that a defendant seeking plea withdrawal must show that his or her plea decision was affected by misinformation. *See Bartelt*, 112 Wis. 2d at 483–84. We further explained in *Harden* that contrary language

If this is Howell's meaning, we disagree. Defendants routinely enter pleas with an understanding of what the State must prove even though they claim, and perhaps believe, that they are not actually guilty of the charged crime. Boiled down, this assertion is nothing more than a conclusory allegation that Howell must have misunderstood because he did not commit the crime.

¶ 42.  Howell's fifth assertion involves a statement that his trial counsel made at sentencing. At sentencing, Howell's counsel told the court that Howell "admit-

in our subsequent decision in *State v. Quiroz*, 2002 WI App 52, ¶ 16, 251 Wis. 2d 245, 641 N.W.2d 715, may not be relied on because *Bartelt* is binding precedent. *Harden*, 287 Wis. 2d 871, ¶ 6. Although *Harden* and *Quiroz* are *Bangert*-type cases, and *Bartelt* is pre-*Bangert*, it is readily apparent that the *Bartelt* rule applies regardless which party has the burden of proof.

We note that both Howell and the State seem to believe it matters whether Howell asserted and explained why his misunderstanding *caused* him to plead guilty. Howell, in an effort to distinguish *Bentley*, says:   "But here Mr. Howell explained how and why his misunderstanding of 'party to a crime' would have affected his decision to plead guilty." The State quotes *Hampton* as follows:   "In [non-*Bangert*] cases, . . . [t]he defendant must prove the linkage between his plea and the purported defect [i.e., external factor]" (quoting *Hampton*, 274 Wis. 2d 379, ¶ 63, bracketed words supplied by the State). If the parties mean to suggest that Howell must prove "linkage" between his decision to enter a plea and something else, they are mistaken. The reference to a "purported defect" in *Hampton* is plainly a reference to the ineffective-assistance-of-counsel context of *Bentley. Hampton*, 274 Wis. 2d 379, ¶ 63. *Bentley* is a specific type of plea withdrawal case in which the alleged misunderstanding is based on a claim of ineffective assistance, drawing into the analysis the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, the part of *Hampton* the State relies on does not apply here because Howell has not asserted ineffective assistance of counsel.

ted a role in arranging for that firearm to be present." Howell asserted in his plea withdrawal motion that he never said any such thing. However, even if it is true that Howell said no such thing to his counsel, that fact does not address Howell's understanding of party-to-a-crime liability at the time of the plea hearing. Like Howell's fourth assertion, this is nothing more than a bald assertion that he did not commit the crime.

¶ 43. The last item in Howell's motion that we address is his assertion that he misunderstood "based" on an out-of-court explanation by his trial counsel of the term "party to a crime." Howell's motion asserts that this exchange led him to believe he was guilty as a party to a crime because he was present at the shooting and did not prevent it. This too is a conclusory allegation within the meaning of *Nelson/Bentley*. It does not tell the court, even generally, what counsel allegedly said.

¶ 44. When Howell baldly asserts that his alleged misunderstanding was "based" on some unknown thing counsel told him, what does Howell mean? What did counsel say that might have misled Howell?[13] If Howell came to court and made the assertion he made in his motion, the circuit court could not meaningfully assess

---

[13] Howell asserts that the questions asked in this court's withdrawn opinion and in the State's supplemental brief are the "wrong questions." He contends the questions go to his credibility, something that should not be resolved without an evidentiary hearing. We agree with Howell that some of the questions posed in the State's supplemental brief seem directed at Howell's credibility (*e.g.*, "If Howell's postconviction claim were true, then *why* did Howell acknowledge at the plea hearing that he [saw his cousin with the gun before the shooting]?"). But the questions we ask do not question Howell's credibility; they point out omissions in Howell's motion.

405

whether, in light of other facts in the case, Howell's attorney actually said something misleading. *See Allen,* 274 Wis. 2d 568, ¶ 21 (non-conclusory allegations are allegations that " 'allow the reviewing court to meaningfully assess [the defendant's] claim' " (quoting *Bentley,* 201 Wis. 2d at 314)). If Howell wants an evidentiary hearing based on an allegation that he was misled by his trial counsel, Howell's motion must at least inform the circuit court in some fashion what was said to mislead him.

¶ 45.    In sum, Howell's motion does not contain factual allegations that are subject to meaningful assessment in light of the record. Indeed, Howell's motion presents a good example showing that volume does not equal sufficiency for purposes of *Nelson/Bentley.* Howell's motion contains many assertions, references to the record, and arguments. But when we look at his assertions and arguments one by one, each is conclusory or irrelevant. Thus, denial of his motion without an evidentiary hearing was proper.[14]

---

[14] Although we decide this case in favor of the State on other grounds, we briefly comment on the State's argument that Howell's motion was not accompanied by an affidavit from Howell, but only his counsel's affidavit containing hearsay assertions about what Howell claimed to be true. According to the State, there is a general rule that hearsay recitations in an affidavit are insufficient to trigger an evidentiary hearing and we should apply that general rule here. In support, the State cites *State v. Lass,* 194 Wis. 2d 591, 535 N.W.2d 904 (Ct. App. 1995), and *State v. Bruckner,* 151 Wis. 2d 833, 447 N.W.2d 376 (Ct. App. 1989). However, these cases provide no support for such a requirement. In *Lass,* we did not address whether the circuit court wrongly denied the defendant an evidentiary hearing. Rather, we concluded that an affidavit containing hearsay was insufficient to support a request for disclosure of the identity of a confidential informer. *Lass,* 194 Wis. 2d at

## The Dissenting Opinion

¶ 46.   The dissent attributes to the majority statements we do not make, and exhibits the same sort of confusion we endeavor to reduce. In our view, the dissent reflects widespread confusion caused by a body of law that is highly complex and too often counterintuitive.

*By the Court.*—Judgment and order affirmed.

¶ 47. DYKMAN, J. (*dissenting*).   We withdrew our previous opinion and reinstated this case because we recognized that *State v. Hampton*, 2004 WI 107, 274 Wis. 2d 379, 683 N.W.2d 14, facially applied here.[1] This would have resulted in a circuit court evidentiary hearing at which Howell could explain his assertion that he believed his presence at the scene of a shooting was enough to convict him of first-degree reckless injury. But the majority now prefaces its analysis by declaring that Howell makes a non-*Bangert*[2] claim.

599–600. In *Bruckner*, we did address the denial of an evidentiary hearing, but did not purport to set forth any general rule. Rather, in dictum in a footnote we addressed the prerequisites for holding a *Franks* hearing, not hearings generally. *Bruckner*, 151 Wis. 2d at 864–65 n.15. Furthermore, even in the *Franks* context, the footnote does not say that an *affidavit* based on personal knowledge is generally required. *See id.* Finally, we note that in *State v. Brown*, 2006 WI 100, 293 Wis. 2d 594, 716 N.W.2d 906, the supreme court stated:  "A defendant is not required to submit a sworn affidavit to the court, but he is required to plead in his motion that he did not know or understand some aspect of his plea that is related to a deficiency in the plea colloquy." *Id.*, ¶ 62.

[1] The most the majority now concedes is that "there may be some ambiguity in *Hampton*." Majority, ¶ 29.

[2] *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

Majority, ¶ 1. It then avoids the common-sense conclusion that *Hampton* speaks to both *Bangert* and non-*Bangert* claims. There are two reasons why the majority goes astray. First, I use the majority's own definition of a *Bangert* claim, and conclude that Howell asserts a *Bangert* claim. Second, the four reasons the majority cites for not following *Hampton* are unconvincing.

¶ 48. Howell asserts that he did not understand the charges against him and, "as in *Hampton*, 274 Wis. 2d at 408, the trial court here could have headed off the problem with a sufficient plea colloquy. Had the trial court gone over what is required for party-to-a-crime liability, this issue would not be here." WISCONSIN STAT. § 971.08(1) (2003–04) requires a trial court to determine that a plea of guilty or no-contest is made with understanding of the nature of the charge. Understanding party-to-a-crime liability is necessary if that is how the State prosecutes a defendant. This is a *Bangert* claim, and the majority concedes that *Bangert* claims need not explain in detail why a defendant failed to understand an important issue. Majority, ¶ 14.

¶ 49. The majority's decision not to follow *Hampton* is surprising. We have long understood that the supreme court is the primary law-defining court in Wisconsin, and that other courts must follow its precedents when deciding cases. While the court of appeals has the authority to issue opinions having precedential value, "[t]he supreme court, unlike the court of appeals, has been designated by the constitution. and the legislature as a law-declaring court." *Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (citing *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1983)).

¶ 50. Long before *Cook,* this court was reminded of its limitations in *State v. Lossman,* 118 Wis. 2d 526,

533, 348 N.W.2d 159 (1984). There, the supreme court reversed a court of appeals decision that the supreme court said had side-stepped an established high court precedent. "Had the court of appeals adhered to precedent, as it is required to do, this review would not have been necessary," wrote the court. *Id.* "It is apparent that [the court of appeals] thought the decision of this court in [*State v.*] *Zdiarstek* [53 Wis. 2d 776, 193 N.W.2d 833 (1972)] was wrong; and, hence, it attempted to avoid what is a clear and binding precedent." *Id.* The majority today attempts the same thing the supreme court refused to accept in *Lossman.*

¶ 51.  The first of the majority's four reasons to disregard *Hampton* is that paragraphs 56 and 57 of *Hampton* are somehow rendered meaningless when one undertakes a "careful reading of paragraphs 50 to 65 in *Hampton.*" Majority, ¶ 25. I disagree. The *Hampton* court states that the issue in paragraphs 50 to 65 "concerns a defendant's burden to make a showing that will require the court to conduct an evidentiary hearing on the defendant's motion to withdraw his plea." *Hampton,* 274 Wis. 2d 379, ¶ 50. The court concluded that when a court fails to personally advise a defendant that the court was not bound by the plea agreement and the defendant alleges he did not understand that the court was not bound by the agreement, the defendant is entitled to an evidentiary hearing on a motion to withdraw his plea. *Id.* In so concluding, the court compared and contrasted *Bangert*-type cases with *Nelson*[3]/*Bentley*[4] cases, and determined that a motion alleging that a defendant did not understand that the court was bound by the plea agreement "passes the test

---

[3] *Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972).

[4] *State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 60 (1996).

of *Nelson* and *Bentley*" by alleging facts which, if true, would entitle the defendant to relief. *Hampton*, 274 Wis. 2d 379, ¶ 57.

¶ 52.   A careful reading of paragraphs 50–65 reveals that the supreme court was comparing the two types of plea withdrawals to explain its conclusion that "[r]equiring an evidentiary hearing in the face of a supported allegation that the plea colloquy was defective is an effective means of enforcing the court's plea taking obligations." *Hampton*, 274 Wis. 2d 379, ¶ 65. Here, the defendant correctly notes: "Had the trial court gone over what is required for party-to-a-crime liability, this issue would not be here." He also cites *Bangert* three times in his brief to support his assertion that the trial court failed to explain party-to-a-crime liability, leading to his misunderstanding of the nature of the charge. *See* WIS. STAT. § 971.08(1)(a) (trial court must determine that defendant understands nature of charge).

¶ 53.   If the supreme court did not mean to analyze failure to understand cases in the same way whether they are *Bentley* or non-*Bentley* cases, why did it write the following?

> In addition, the defendant must allege that he did not in fact understand that the court was not bound by the plea agreement because that information/explanation was not provided. We think a motion of this nature passes the test of *Nelson* and *Bentley*:   a motion to withdraw a plea that alleges *facts* which, if true, would entitle the defendant to relief. The allegation that the defendant did not understand is, admittedly, conclusory; but the allegation raises a question of *fact* and perhaps law that requires resolution.

*Hampton*, 274 Wis. 2d 379, ¶ 57. No matter how carefully one reads paragraphs 57 and 58 of *Hampton*,

failure to understand is failure to understand. I am not convinced by the majority's first reason.

¶ 54.  The majority's second reason is that *Bangert* mandated a burden-shifting procedure to ensure that trial courts follow mandated plea colloquy requirements. Majority, ¶ 26. That is certainly true. But even if trial courts comply with *Bangert* requirements, a defendant may legitimately claim that he or she did not understand something which, had he or she understood, would have negated his or her decision to plead guilty. Underlying both *Bangert* and non-*Bangert* claims is a due process right to know all the relevant facts before entering a guilty plea. If conclusory allegations of misunderstanding are adequate to satisfy due process under *Bangert*, why is a different procedure necessary to satisfy due process in non-*Bangert* cases? *Hampton* recognizes this, which is why the supreme court in *Hampton* permitted conclusory allegations of misunderstanding in non-*Bangert* cases. The majority's second reason does not convince me.

¶ 55.  The majority's third reason merely revisits its disagreement with *Hampton*. The majority's policy determination is that busy trial courts should not have to spend time dealing with motions to withdraw pleas where an allegation of misunderstanding is conclusory. Majority, ¶ 27. The majority would require defendants to explain in detail *why* they failed to understand. The supreme court has concluded otherwise:  "The allegation that the defendant did not understand is, admittedly, conclusory; but the allegation raises a question of *fact* and perhaps law that requires resolution." *Hampton*, 274 Wis. 2d 379, ¶ 57. Courts may differ as to whether a defendant who signs an affidavit claiming non-understanding should be entitled to a hearing to determine whether the constitutional requirement of

411

understanding is present or absent. But the supreme court has the last word on this issue. Whether that word is troublesome and whether we disagree with the supreme court's policy choices are not valid reasons for departing from the supreme court's clear language.

¶ 56. The final reason the majority believes it can disregard *Hampton* is that *State v. Brown*, 2006 WI 100, ¶ 42, 293 Wis. 2d 594, 716 N.W.2d 906, makes a "clear reference" to *Nelson/Bentley* plea withdrawal motions. Majority, ¶ 28. This reason is wishful thinking. I do not cite *Hampton* to convince a reader that the supreme court is unaware that *Bangert* and *Nelson/Bentley* claims are different. It clearly is aware of the difference. That is not the issue here. The issue is whether, in a *Nelson/Bentley* affidavit, the defendant is required to explain in detail why he or she did not understand something he or she was told or which he or she read. That was decided in *Hampton*, in the paragraphs I have quoted.

¶ 57. Common sense tells us that the supreme court was correct. It is difficult to the point of impossibility to explain why one misunderstood something. Was there room noise? Did the perceiver have a problem with the meaning of a word? A sentence? Was the defendant's attorney rustling papers? Is a person's vocabulary limited in some respect? We know that some people are more intelligent than others. There are a myriad of reasons why people do not understand each other. No one always remembers why he or she did not understand something. Many people do not know why they do not know what they do not know. For example, appellate judges have been known to say to each other that they do not understand something a colleague believes he or she has explained. Explaining why one

412

does not understand is often difficult if he or she does not understand in the first place.

¶ 58. *Brown*, another unanimous supreme court opinion, and *Hampton* were written by the same author. The *Brown* court cites the same paragraph of *Hampton* which the majority believes is a paragraph in which the supreme court did not mean what it said. *Brown*, 293 Wis. 2d 594, ¶ 67. One would think that if the supreme court did not mean what it said the first time around, it would not cite the same paragraph of *Hampton* without noting the problem the majority identifies. But it did not. Instead, it cited *Hampton* because, earlier, it had questioned why the defendant had not directly alleged that he did not understand the nature of the charges against him. *Id.*, ¶¶ 66–67.

¶ 59. The majority asserts that *Hampton* is a *Bangert* case, but in the supreme court the State argued *Hampton* as a *Bentley* case. The State asserted: "Moreover, a court's failure to personally inform a defendant that the court is not bound by the negotiated sentencing recommendation does not invoke the *Bangert* burden-shifting framework because it is not information required to be provided pursuant to *Bangert*." Brief of Plaintiff-Respondent-Petitioner at 27, *State v. Hampton*, 2004 WI 107, 274 Wis. 2d 379, 683 N.W.2d 14 (No. 2001AP509–CR) (*available in* Appendices and Briefs, 274 Wis. 2d 324–424 at tab 3). Thus, the supreme court needed to address both approaches to plea withdrawal and determine what was necessary for each approach. The language used in paragraphs 57 and 58 of *Hampton* is therefore not, as the majority would have us believe, a mere rejection of the State's *Bentley* argument, but is what it purports to be, a requirement that an allegation of failure to understand is "qualitatively different" and raises a question

of fact necessitating an evidentiary hearing at which the defendant's assertion of misunderstanding can be tested. The court's discussion of "understanding" is common to both types of plea withdrawal cases.

¶ 60. As a matter of policy, we employ a burden-shifting analysis in *Bangert* while we do not in *Nelson/Bentley* cases. But both types of cases are Wisconsin's response to the Supreme Court's determination that a guilty plea must be intelligent, voluntary and made with understanding. *See Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969). A defendant does not constitutionally "understand" differently under the requirements of *Bangert* than the "understanding" that may be necessary in some *Nelson/Bentley* cases. A defendant can misunderstand the range of punishments to which he will be subjected or something the trial court is not statutorily or by case law required to explain. Both misunderstandings, if true, are a problem because as a matter of due process, a guilty plea is valid only if voluntary, intelligent and understood.

¶ 61. *Hampton* recognized this, and *Brown* followed suit. Indeed, *Brown* directly addressed the fact that Brown not only failed to offer a detailed explanation of why he did not understand, his motion did not directly state that he failed to understand some vital information in the first place. The supreme court could have held that this was fatal to Brown's case. But it did not. Instead, a unanimous court wrote:

> We share the State's concern that this motion does not allege directly that the defendant did not know or understand certain information that should have been provided or addressed at the plea hearing. A defendant is not required to submit a sworn affidavit to the court, but he is required to plead in his motion that he did not

414

know or understand some aspect of his plea that is related to a deficiency in the plea colloquy.

*Brown*, 2006 WI 100, ¶ 62.

¶ 62. As a constitutional matter, there is no reason for the majority to attempt a distinction which depends on its conclusion that it may safely ignore *Hampton*. Howell tells us that he did not understand party-to-a-crime liability, a complex and not totally intuitive subject to begin with. He says that his attorney explained party-to-a-crime in a way that led him to believe that his presence at a shooting would permit a jury to find him guilty. The majority would require something more than Howell's misunderstanding, though that would not be possible except under the most unusual of circumstances. With the requirements the majority announces, defendants who really do not understand vital information, and therefore cannot enter a voluntary plea, will still be held to the results of the plea. I cannot join in this conclusion.

¶ 63. Guilty pleas are not easy tasks for trial courts or defendants. Hindsight is always twenty-twenty, and pleader's remorse cannot be discounted. Still, with the time appellate courts and continuing judicial education programs have spent on the subject, and with the assistance of a district attorney intent on reaching a just end to a criminal case and defense counsel making sure that his or her client has all the information to make an informed choice, valid guilty pleas are certainly attainable. Evidentiary hearings on motions to withdraw pleas may not end with trials, but they are part of a system that endeavors to assure that the guilty are found guilty and those not proven guilty are released. I do not agree that we get to a better world by interpreting *Hampton* to mean something other

than what it says and going beyond *Brown* in motion requirements. The majority opinion only adds to the confusion it purports to solve. I conclude that Howell should be given the opportunity to make his case to the circuit court.

¶ 64.   I believe that the body of law the majority describes as "highly complex and too often counter-intuitive" is made so by the requirement that we divide due process violations into *Bangert* and non-*Bangert* types. Majority, ¶ 46. Neither the majority nor I can change that. Perhaps trial courts need an incentive to avoid certain categories of due process violations, but I am not sure that is necessary. I lay no claim to infalli-bility. If my interpretation of the cases the majority interprets differently is ultimately rejected, I can only hope that what results will be an easily understood rule. Until then, I can only respectfully dissent.