STATE of Wisconsin, Plaintiff-Respondent,

v.

Andrae D. HOWELL,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP731-CR. Oral argument March 7, 2007.
—Decided June 21, 2007.*

2007 WI 75

(Also reported in 734 N.W.2d 48.)

351

354

355

For the defendant-appellant-petitioner there were briefs and oral argument by *Ellen Henak,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals affirming a judgment and order of the Circuit Court for Milwaukee County, Jean W. DiMotto, Judge.[1] The circuit court denied, without an evidentiary hearing, Andrae D. Howell's postconviction motion to withdraw his guilty plea, holding that the plea colloquy, complaint, and sentencing sufficiently demonstrated that Howell understood that he was aiding and abetting his cousin Joseph Sharp in first degree reckless injury, Wis. Stat. § 940.23(1)(a) (2003–04),[2] and that there was a sufficient factual basis to support the plea.

---

[1] *State v. Howell,* 2006 WI App 182, 296 Wis. 2d 380, 722 N.W.2d 567.

[2] All references to the Wisconsin statutes are to the 2003–04 version unless otherwise indicated.

¶ 2. The issue on review is limited to whether the circuit court erred in failing to hold an evidentiary hearing on Howell's motion to withdraw his plea. More specifically, the issue is whether Howell's motion to withdraw his guilty plea satisfies, for purposes of granting an evidentiary hearing, the requirements of (1) the *Bangert* line of cases, *State v. Bangert,* 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986); (2) the *Nelson/Bentley* line of cases, *Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and *State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 50 (1996); or (3) both lines of cases. We are not asked to decide, and do not decide, whether the circuit court should ultimately grant or deny Howell's motion to withdraw his guilty plea.

¶ 3. This case involves the application of our well-developed case law on a circuit court's granting an evidentiary hearing on a defendant's motion to withdraw a guilty plea.

¶ 4. Confusion and disagreement abound about whether Howell's motion papers present a *Bangert* or a *Nelson/Bentley* motion. In the State's original brief to the court of appeals, counsel analyzed Howell's plea-withdrawal claim in a *Bangert* framework. In the State's supplemental brief to the court of appeals and the State's response to Howell's petition for review, counsel adopted the view of the court of appeals' majority that Howell had alleged a *Nelson/Bentley* claim.

¶ 5. Counsel for the State suggests in this court that upon further analysis and reflection, Howell's plea-withdrawal motion exhibits features of both a *Bangert* motion and a *Nelson/Bentley* motion, and is in effect a "dual-purpose motion." The motion alleges that Howell's misunderstanding was a result of problems occurring both within and outside the plea colloquy.

360

¶ 6. The court of appeals did not review Howell's motion as a *Bangert* motion because it concluded that Howell had not alleged that the plea colloquy was defective. The dissenting judge in the court of appeals considered Howell's motion to be a *Bangert* motion describing a defective plea colloquy.

¶ 7. For the reasons set forth, we hold that Howell is entitled under *Bangert* to an evidentiary hearing regarding his motion to withdraw his guilty plea. As required by *Bangert,* the motion makes a prima facie showing that the circuit court's plea colloquy did not conform with Wis. Stat. § 971.08 and judicially mandated procedures and includes the allegation that Howell did not know or understand information that should have been provided at the plea colloquy.[3] In keeping with *Bangert,* we examine the record at the plea hearing; we do not confabulate about facts and conversations not on the record. We stay focused. A defendant's right to an evidentiary hearing under *Bangert* cannot be circumvented by either the court or the State asserting that based on the record as a whole the defendant, despite the defective plea colloquy, entered a constitutionally sound plea.

¶ 8. In analyzing Howell's motion under *Nelson/Bentley,* we conclude that the part of the motion that could be considered a *Nelson/Bentley* motion raises the same legal issue as the claim under *Bangert,* namely that the plea was not knowing, intelligent, and voluntary because Howell misunderstood the concept of party-to-a-crime liability. The evidentiary matter presented in the *Nelson/Bentley* portion of the motion,

---

[3] *State v. Brown,* 2006 WI 100, ¶ 2, 293 Wis. 2d 594, 716 N.W.2d 906 (citing *State v. Hampton,* 2004 WI 107, ¶ 46, 274 Wis. 2d 379, 683 N.W.2d 14; *State v. Bangert,* 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986)).

361

namely that Howell misunderstood party-to-a-crime liability based on conversations with his attorney, will likely be addressed at the *Bangert* hearing. Consequently, we need not assess the validity of Howell's *Nelson/Bentley* claim. Howell's motion entitles him to an evidentiary hearing under *Bangert* on the issue of whether his plea was knowing, intelligent, and voluntary.

¶ 9. We thus hold that Howell's motion warrants him an evidentiary hearing under *Bangert* to determine whether he can withdraw his guilty plea because it was not knowing, intelligent, or voluntary. The burden is on the State at the evidentiary hearing in the instant case on the *Bangert* motion to prove by clear and convincing evidence that Howell's plea was knowing, intelligent, and voluntary.

¶ 10. Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for an evidentiary hearing under *Bangert* to determine whether Howell is entitled to withdraw his guilty plea.

## I

¶ 11. We briefly summarize the facts here. We discuss the plea colloquy and Howell's motion when we examine the legal issues relating to *Bangert* and *Nelson/Bentley*.

¶ 12. On February 8, 2004, Marcus Pearson was shot twice while seated in his vehicle. The defendant, Andrae D. Howell, along with his sister Kimberly and his cousin Joseph Sharp, had allegedly driven to the scene to find another sister, April, who was dating Pearson. Pearson alleged that Howell exited his vehicle, brandished a rifle, and shot him.

¶ 13. The State charged Howell with first degree reckless injury under Wis. Stat. § 940.23(1)(a).[4] On the date originally set for trial, Sharp allegedly admitted to Howell's trial counsel that Sharp, not Howell, shot the victim. Howell's trial counsel requested an adjournment allegedly in light of this information.

¶ 14. At the next hearing, the State moved to amend the information to add party-to-a-crime liability, on the theory that evidence at the trial might show that Sharp, not Howell, was the shooter and that Howell "assisted people in putting the victim" in a place where he could be shot by someone else. A party to a crime is statutorily defined as "a person who directly commits the crime"; a person who "intentionally aids and abets the commission" of a crime; or a person who "is a party to a conspiracy with another to commit it."[5] Milwaukee County Circuit Court Judge Richard J. Sankovitz allowed the amendment.[6]

¶ 15. On the same day the information was amended, Howell entered a guilty plea to being party to the crime of first degree reckless injury. Judge Sankovitz conducted the plea colloquy, accepted the plea, and convicted Howell of the offense charged.

¶ 16. At a later proceeding, Milwaukee County Circuit Court Judge Jean DiMotto sentenced Howell to fourteen years' imprisonment with seven years of initial incarceration and seven years of extended supervision.

---

[4] The information incorrectly states that the charge is first degree recklessly endangering safety under Wis. Stat. § 941.30(1).

[5] Wis. Stat. § 939.05(1),(2)(b).

[6] It appears that the charge was only constructively amended to include a party-to-a-crime modifier; neither the complaint nor the information in the record reflects this amendment.

¶ 17. Thereafter, Howell filed a postconviction motion to withdraw his guilty plea pursuant to Wis. Stat. § 809.30, arguing that his plea was not entered knowingly, intelligently, and voluntarily because he failed to understand the concept of party-to-a-crime liability for first degree reckless injury.

¶ 18. The circuit court, Judge Jean DiMotto, without indicating whether she was ruling under the *Bangert* or *Nelson/Bentley* line of cases, denied Howell's motion without an evidentiary hearing. The circuit court ruled that "[t]he plea in conjunction with the complaint is more than sufficient to establish that the defendant acted as a party to a crime in the offense perpetrated against Marcus Pearson and that the defendant *understood* that he was aiding his cousin or intentionally assisting his cousin in facilitating the commission of the offense, whether or not he realized his cousin would utilize the weapon" (emphasis in original).

¶ 19. On appeal, the court of appeals affirmed the circuit court's judgment and order, holding that Howell's motion raised a *Nelson/Bentley* challenge and that Howell's motion contained only conclusory allegations that were not "subject to meaningful assessment in light of the record."

¶ 20. Howell petitioned the court of appeals for a rehearing in light of *State v. Hampton,* 2004 WI 107, 274 Wis. 2d 379, 683 N.W.2d 14. The court of appeals withdrew its original unanimous opinion to address the alleged inconsistency between its decision and this court's decision in *Hampton.*[7]

¶ 21. Upon rehearing, the court of appeals once again held that Howell was not entitled to an eviden-

[7] *Howell,* 296 Wis. 2d 380, ¶ 10.

tiary hearing on his motion to withdraw his guilty plea. The court of appeals determined that "Howell's motion did *not* assert that his plea colloquy was defective within the meaning of *State v. Bangert*."[8] The court of appeals applied *Nelson/Bentley* to Howell's motion and again held that Howell's motion included only conclusory statements that did not entitle him to an evidentiary hearing. The court of appeals rejected Howell's argument that *Hampton* does not require more than a conclusory statement in a postconviction motion to withdraw a guilty plea when the defendant alleges he misunderstood the nature of the crime charged.

¶ 22. Court of Appeals Judge Charles Dykman dissented, concluding that Howell had in fact raised a *Bangert* claim and alleged sufficient facts to entitle him to an evidentiary hearing. Judge Dykman also concluded that *Hampton* applied to both *Bangert* and non-*Bangert* (that is, to *Nelson/Bentley*) claims and that under *Hampton,* Howell had sufficiently alleged a misunderstanding to warrant an evidentiary hearing on the motion.

## II

■

¶ 23. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction . . . ."[9] By pleading guilty or no contest to a crime, a defendant waives important constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to

---

[8] *Id.,* ¶ 9 (emphasis in original).

[9] *Boykin v. Alabama,* 395 U.S. 238, 242 (1969).

confront one's accusers.[10] Under the United States Constitution, a guilty or no contest plea "must be affirmatively shown to be knowing, intelligent, and voluntary."[11]

¶ 24. To warrant an evidentiary hearing on a postconviction motion to withdraw a plea of guilty or no contest, the defendant must satisfy the requirements of *Bangert* or *Nelson/Bentley*.

### III

¶ 25. We first analyze Howell's motion under *Bangert*.

¶ 26. *Bangert* and its progeny govern the circuit court at plea colloquies. A circuit court must address defendants personally and fulfill several duties set forth in Wis. Stat. § 971.08[12] and judicial mandates to ensure

---

[10] *Id.* at 243; *Hampton,* 274 Wis. 2d 379, ¶ 22.

[11] *Brown,* 293 Wis. 2d 594, ¶ 25.

[12] Wisconsin Stat. § 971.08 provides:

971.08 Pleas of guilty and no contest; withdrawal thereof.

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

that a plea of guilty or no contest is constitutionally sound.[13] The purpose of these duties is to inform the defendant of the nature of the charges, to ascertain the defendant's understanding of the charge, and to ensure that the defendant is aware of the constitutional rights being waived.[14] "In a legal sense, the purpose of the colloquy is to assure a voluntary and intelligent plea, as well as fundamental fairness in the taking of pleas."[15]

¶ 27. **A Bangert Motion.** A defendant may invoke *Bangert* only by alleging that the circuit court failed to fulfill its plea colloquy duties.[16] A *Bangert* motion warrants an evidentiary hearing if (1) the motion makes "a *prima facie* showing that [the] plea

---

(d) Inquire of the district attorney whether he or she has complied with s. 971.095(2).

(2) If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

(3) Any plea of guilty which is not accepted by the court or which is subsequently permitted to be withdrawn shall not be used against the defendant in a subsequent action.

[13] The court recently commented on these duties in *Brown*, 293 Wis. 2d 594, ¶¶ 34–36. We will describe only those duties relevant to the instant review. The remainder are discussed in *Brown*.

[14] *Bangert*, 131 Wis. 2d at 267.

[15] *Hampton*, 274 Wis. 2d 379, ¶ 44. "In a practical sense, the purpose of the colloquy is to promote finality by eliminating one of the grounds for plea withdrawal." *Id.*

[16] *Brown*, 293 Wis. 2d 594, ¶ 36.

was accepted without the trial court's conformance with [Wis. Stat.] § 971.08 or other mandatory procedures,"[17] and if (2) the motion alleges that in fact the defendant did not know or understand the information that should have been provided at the plea colloquy.[18]

¶ 28. The requirements for a *Bangert* motion are relatively relaxed because the source of the defendant's misunderstanding, the plea colloquy defect, should be clear from the transcript of the hearing at which the plea was taken. We require less from the allegations in a *Bangert* motion because the circuit court bears the responsibility of preventing failures in the plea colloquy.[19]

¶ 29. If the defendant's motion meets both prongs of *Bangert,* the State has the burden to prove at the

---

[17] *Bangert,* 131 Wis. 2d at 274. In *Hampton,* we explained that "the defendant must point to a specific defect in the plea hearing which constitutes an error by the court. The defendant will not satisfy this burden merely by alleging that 'the plea colloquy was defective' or 'the court failed to conform to its mandatory duties during the plea colloquy.' The defendant must make specific allegations . . . ." *Hampton,* 274 Wis. 2d 379, ¶ 57.

[18] *Bangert,* 131 Wis. 2d at 274. *See also Hampton,* 274 Wis. 2d 379, ¶ 46. A *Bangert* claim, in essence, "argues that the colloquy conducted by the trial court at the plea hearing was constitutionally insufficient to ascertain [the defendant's] understanding of the nature of the charge and [the defendant's] knowledge of which constitutional rights he was waiving." *Bangert,* 131 Wis. 2d at 255.

[19] *Bangert* "requires something less to support the defendant's allegation of his understanding at the time of plea [because] the court can head off the problem with a sufficient plea colloquy." *Hampton,* 274 Wis. 2d 379, ¶ 65.

evidentiary hearing that the plea was knowing, intelligent, and voluntary.[20]

¶ 30. **Standard of Appellate Review.** This court decides whether a postconviction motion to withdraw a guilty or no contest plea under *Bangert* entitles a defendant to an evidentiary hearing independently of the circuit court and court of appeals but benefiting from their analyses.[21]

¶ 31. A reviewing court first determines as a matter of law whether a defendant's motion "has pointed to deficiencies in the plea colloquy that establish a violation of Wis. Stat. § 971.08 or other mandatory duties at a plea hearing."[22] The reviewing court then determines as a matter of law whether a defendant "has sufficiently alleged that he did not know or understand information that should have been provided at the plea hearing . . . ."[23]

¶ 32. **Howell's Bangert Motion.** Howell and the State agree in this court that Howell's motion should be considered under *Bangert*. They disagree, however, whether the motion entitles Howell to an evidentiary hearing under *Bangert*.

¶ 33. Howell contends that his allegations are sufficient to entitle him to an evidentiary hearing under *Bangert*, namely that the circuit court did not determine that the plea was made voluntarily with under-

---

[20] *Bangert,* 131 Wis. 2d at 274–75.

[21] *Brown,* 293 Wis. 2d 594, ¶ 21.

[22] *Brown,* 293 Wis. 2d 594, ¶ 21; *see also State v. Lackershire,* 2007 WI 74, ¶ 25, 734 N.W.2d 23, 301 Wis. 2d 418.

[23] *Brown,* 293 Wis. 2d 594, ¶ 21 (citing *Bentley,* 201 Wis. 2d at 310).

standing of the nature of the charge; did not clarify what party-to-a-crime liability entailed; and did not correct misleading statements the State made during the plea colloquy about party-to-a-crime liability. He asserts that as a result, he did not understand party-to-a-crime liability such that his plea was not knowing or voluntary.

¶ 34. The State contends that Howell's *Bangert* motion fails because the plea colloquy was not defective. The State asserts that the plea colloquy adequately and accurately informed Howell of his criminal liability as an aider and abettor party to a crime.

¶ 35. Relevant to the instant review are two *Bangert* duties of a circuit court at the plea colloquy.

██

¶ 36. One, "the [circuit] court must address the defendant personally and . . . [e]stablish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea . . . ."[24] Two, "the [circuit] court must address the defendant personally and . . . [a]scertain personally whether a factual basis exists to support the plea . . . ."[25]

¶ 37. *Duty to Establish Defendant's Understanding.* We first examine the circuit court's duty to establish the defendant's understanding of the nature of the crime. In *State v. Brown,* 2006 WI 100, ¶ 55, 293 Wis. 2d 594, 716 N.W.2d 906, the court recognized that party-to-a-crime liability needed to be addressed by the circuit court during the plea colloquy.

_____

[24] *Id.,* ¶ 35 (citing *Bangert,* 131 Wis. 2d at 262; Wis. Stat. § 971.08(1)(a)).

[25] *Id.* (citing *Bangert,* 131 Wis. 2d at 262; Wis. Stat. § 971.08(1)(b)).

¶ 38. In the instant case, as evidenced by the record, the circuit court engaged in only a limited exploration regarding whether Howell understood the nature of his criminal liability as an aider and abettor.

¶ 39. We examine the relevant portions of the record, namely the transcript of the plea colloquy, to determine whether the plea colloquy was defective. We examine the plea colloquy first to determine whether the circuit court informed Howell of the nature of the charge and then whether the circuit court ascertained Howell's understanding of the nature of the charge.[26]

¶ 40. In permitting the amendment to the charge to include the party-to-a-crime modifier at the beginning of the plea hearing, the circuit court characterized party-to-a-crime liability in the instant case as assisting people in putting the victim in a place where he could be shot. The circuit court then engaged in the following exchange with Howell's trial counsel and Howell:

> THE COURT: Would it be fair to state that the amendment to the information comprises the prospect that at trial the evidence might show that Mr. Howell didn't pull the trigger, *but that he assisted people in putting the victim in a place where he could be shot by somebody else?*
>
> [DEFENSE COUNSEL]: That's a correct statement.
>
> THE COURT: Mr. Howell, do you agree with that?
>
> THE DEFENDANT: Yes, Your Honor.

(Emphasis added.)

---

[26] *Bangert,* 131 Wis. 2d at 267. In *Bangert,* the court "characterize[d] this obligation as a duty to first inform a defendant of the nature of the charge or, alternatively, to first ascertain that the defendant possesses accurate information about the nature of the charge. The court must then ascertain the defendant's understanding of the nature of the charge . . . ." *Id.*

¶ 41. Later in the plea colloquy, the circuit court described how if Howell went to trial the State would have to prove that Howell shot the victim or assisted the person who shot the victim, knowing what that person was doing. The circuit court addressed Howell as follows:

> THE COURT: Do you understand that before you can be found guilty the State would be required to prove that on February 8th of this year someone caused great bodily harm to [Pearson]. The State would have to prove that whoever did this [shot Pearson] did it by criminally reckless conduct. That means that they were engaged in conduct that the person knew at the time to create a substantial and unreasonable risk of death or great bodily harm to Mr. Pearson, and was aware that they were creating such a risk. The State would have to prove that the person who shot him, shot him in circumstances which showed utter disregard for human life. *And then the State would have to prove either that you were the person who did all those things or that you intentionally assisted someone else who was doing those things, knowing what they were doing.*
>
> Do you understand what the State would have to prove?
>
> THE DEFENDANT: Yes.

(Emphasis added.)

¶ 42. When prompted by the circuit court, the State, in describing the nature of Howell's criminal liability as a party to a crime, explained that Howell was with the shooter, observed the shooter with the gun as they got out of the car, and would have approached the victim in this situation. This part of the colloquy reads as follows:

THE COURT: So, if the case came to trial what are the two possibilities that the State could prove as far as Mr. Howell's involvement in the shooting?

[THE STATE]: The two possibilities would be, Judge, that, one, he is the actual shooter, which would have been the victim's actual testimony; the other is what defense counsel and I have discussed. His position and his argument to the court will be that his cousin was the shooter and *he was there with him, observed him with the gun as they got out of the car and would have approached the victim in this situation.*

THE COURT: Are those facts — or may I accept those facts as true?

DEFENSE COUNSEL: We would stipulate to that factual basis and those are the facts upon which Mr. Howell has indicated his guilt to me as well. Is that correct?

THE DEFENDANT: Yes.

THE COURT: So, Mr. Howell, you're not necessarily agreeing that you shot Mr. Pearson; that you are agreeing that you and your cousin went there and that *you approached Mr. Pearson and by doing so you assisted your cousin in shooting him?*

THE DEFENDANT: Yes.

(Emphasis added.)

¶ 43. Although the circuit court, the State, and Howell's trial counsel were discussing the factual bases for the crime charged, these parts of the plea colloquy have bearing on the court's obligation to inform Howell of the nature of the charge.

¶ 44. Howell's motion contends that the plea colloquy reinforced Howell's belief that his mere presence and his failure to stop the shooting were sufficient to

make him a party to a crime. Howell asserts in his motion that he "never would have pled guilty had he realized that his mere presence was not enough because he maintains he is innocent and did not even know there was a gun until Mr. Sharp raised the gun up to shoot."

¶ 45. To demonstrate that the circuit court failed to explain party-to-a-crime liability adequately, one need only compare the circuit court's plea colloquy with the pattern jury instruction explaining the liability of a person who aids and abets the commission of a crime.

¶ 46. Wisconsin Jury Instruction—Criminal 400 (2005) states in part as follows:

> A person intentionally aids and abets the commission of a crime when, acting with knowledge or belief that another person is committing or intends to commit a crime, (he) (she) knowingly either:
>
>> assists the person who commits the crime; or
>>
>> is ready and willing to assist and the person who commits the crime knows of the willingness to assist.
>
> To intentionally aid and abet [first degree reckless injury], the defendant must know that another person is committing or intends to commit the crime of [first degree reckless injury] and have the purpose to assist the commission of that crime.
>
> However, a person does not aid and abet if (he) (she) is only a bystander or spectator and does nothing to assist the commission of a crime.[27]

¶ 47. The circuit court's curt explanation of aiding and abetting falls far short of this jury instruction and

---

[27] The final sentence of the instruction is to be used "if supported by the evidence." Wis JI—Criminal 400 (2005).

of any other means of informing Howell about the nature of his criminal liability.

¶ 48. Simply stating that the State would have to prove that Howell "assisted" or "intentionally assisted" the shooter was not sufficient to explain to Howell aider and abettor party-to-a-crime liability, either generally or in the context of first degree reckless injury. The circuit court did not explain how Howell had been a party to a crime if he "would have approached the victim" or if he had "assisted people in putting the victim in a place where he could be shot." In short, the circuit court's descriptions of the aiding and abetting aspect of party-to-a-crime liability do not amount to a clear explanation of the charge. This court cannot and should not speculate about what information Howell, counsel, and the circuit court may have shared off the record before the plea hearing.

¶ 49. Accordingly, we conclude that nothing in the plea colloquy demonstrates that Howell received correct information about this charge from other sources.

¶ 50. To satisfy *Bangert,* the circuit court should have established not only that Howell had the proper information but also that he understood that information. The plea colloquy in the instant case quoted above failed to establish that Howell understood the nature of the charge.

¶ 51. This court has recommended that to ascertain a defendant's understanding of a charge, a circuit court might summarize the nature of the charge by reading the jury instructions, might ask defendant's counsel about his or her explanation to the defendant and ask counsel or the defendant to summarize the explanation, or might refer to the record or other evidence of the defendant's understanding of the nature

375

of the charge.[28] We encourage circuit courts to use these or similar methods because "[e]ach method enables a court to ascertain the accuracy of the defendant's knowledge; each method gives substantive content to a defendant's understanding."[29] The circuit court did not employ any of these suggested methods or any other suitable method to ascertain Howell's understanding of party-to-a-crime liability.

¶ 52. The circuit court did not establish Howell's understanding of the information it relayed to Howell by personally questioning him. Rather than asking Howell to summarize his understanding, the circuit court asked him questions that required simple "yes" or "no" responses.

¶ 53. As we explained in *Bangert,* "[a] defendant's mere affirmative response that he understands the nature of the charge, without establishing his knowledge of the nature of the charge, submits more to a perfunctory procedure rather than to the constitutional standard that a plea be affirmatively shown to be voluntarily and intelligently made."[30] By referring simply to Howell's "assistance" in the crime and asking Howell for only a single word response, the circuit court did not appropriately ascertain Howell's understanding. A defendant must "at some point [have] expressed his knowledge of the nature of the charge" to satisfy the requirement of Wis. Stat. § 971.08.[31]

---

[28] *Bangert,* 131 Wis. 2d at 268; *Brown,* 293 Wis. 2d 594, ¶¶ 46–51. These recommendations are not an exhaustive list of methods for circuit courts to ascertain a defendant's knowledge and understanding of the nature of the charge.

[29] *Brown,* 293 Wis. 2d 594, ¶ 56.

[30] *Bangert,* 131 Wis. 2d at 269.

[31] *Bangert,* 131 Wis. 2d at 268–69. A circuit court may tailor

¶ 54. The circuit court did not establish that Howell was properly advised of the nature of the charge by his trial counsel. The circuit court asked Howell's trial counsel only whether he was satisfied that Howell was entering the guilty plea knowingly and voluntarily, to which counsel answered "yes." This question by the circuit court and Howell's trial counsel's response were not adequate. "A statement from defense counsel that he has reviewed the elements of the charge, without some summary of the elements or detailed description of the conversation, cannot constitute an 'affirmative showing that the nature of the crime has been communicated.' "[32]

¶ 55. We thus agree with Howell that, as demonstrated by the record, the plea colloquy was defective in that the circuit court failed to inform Howell of the nature of the charge and failed to ascertain Howell's understanding of the nature of the party-to-a-crime charge.

¶ 56. *Duty to Ascertain Factual Basis.* We turn now to the second alleged defect in the plea colloquy, namely that the circuit court failed in its duty to establish the factual basis for the charged crime to support Howell's guilty plea.[33]

---

a plea colloquy to the individual defendant. *Brown,* 293 Wis. 2d 594, ¶ 58. In "customizing a plea colloquy, however, a circuit court must 'do more than merely record the defendant's affirmation of understanding.' " *Id.,* ¶ 58 (quoting *Bangert,* 131 Wis. 2d at 267).

[32] *Id.* (quoting *Bangert,* 131 Wis. 2d at 268).

[33] Wis. Stat. § 971.08(1)(b); *Brown,* 293 Wis. 2d 594, ¶ 35. The duty of the circuit court to ascertain whether a sufficient

¶ 57. Howell's motion alleges that the circuit court failed to establish a sufficient factual basis for the plea by alleging that his conduct did not satisfy party-to-a-crime liability and that if he had had the proper understanding he never would have pled guilty because he was not a party to the crime of first degree reckless injury. The State recognizes that party-to-a-crime liability is an aspect of the factual basis of the charged crime when the defendant disavows direct participation in the crime and discusses the factual basis requirement in its brief.

¶ 58. A circuit court's failure to fulfill the Wis. Stat. § 971.08(1)(b) factual basis requirement entitles the defendant to the *Bangert* procedure, according to our case law, although "applying the *Bangert* procedure for failure to satisfy the factual basis requirement is an awkward fit." *State v. Lackershire,* 2007 WI 74, 734 N.W.2d 23, 301 Wis. 2d 418. As the court explained in *Lackershire,* when a substantial question exists about the factual basis for a plea of guilty or no contest, doubts arise about whether the plea was knowing and intelligent. The focus of the *Bangert* evidentiary hearing in these cases will be on whether the plea was knowing and intelligent despite the failure of the circuit court to establish whether a factual basis for the plea existed.[34] In the instant case, as in *Lackershire,* the facts relating to the defendant's conduct remain in dispute because the circuit court failed to establish

---

factual basis for the plea exists is an important statutorily and judicially required duty that cannot be shirked. *State v. Lackershire,* 2007 WI 74, ¶ 35, 301 Wis. 2d 418, 734 N.W.2d 23 (citing *Brown,* 293 Wis. 2d 594, ¶ 35, citing *Bangert,* 131 Wis. 2d at 262; Wis. Stat. § 971.08(1)(b)).

[34] *State v. Lackershire,* 2007 WI 74, ¶ 52, 734 N.W.2d 23, 301 Wis. 2d 418.

whether the underlying conduct constituted the crime to which the defendant pled guilty.[35]

¶ 59. In light of our recent decision in *Lackershire,* we use this opportunity to emphasize the importance of a circuit court's ensuring it is satisfied that the defendant in fact committed the crime by engaging in sufficient inquiry at the plea colloquy.[36]

¶ 60. The circuit court's discussion of the factual basis is limited to the following alleged actions by Howell: that "he assisted people in putting the victim in a place where he could be shot by somebody else"; that he either shot Pearson or "intentionally assisted someone else who was doing those things, knowing what they were doing"; that "he was there with [Sharp], observed him with the gun as they got out of the car and would have approached the victim in this situation";[37] and that Howell and Sharp "went there and that [Howell] approached Mr. Pearson and by doing so [he] assisted [his] cousin in shooting him."

¶ 61. No additional details about Howell's role in the crime charged appear in the plea colloquy in part because the circuit court allowed defense counsel to stipulate that a factual basis for the plea existed in the complaint.

> THE COURT: May I accept as true the facts stated in the complaint?

---

[35] *State v. Lackershire,* 2007 WI 74, ¶ 46, 734 N.W.2d 23, 301 Wis. 2d 418.

[36] *State v. Lackershire,* 2007 WI 74, ¶ 50, 734 N.W.2d 23, 301 Wis. 2d 418; Wis. Stat. § 971.08(1).

[37] Statement by the prosecutor in response to the circuit court.

[DEFENSE COUNSEL]: We would stipulate to the factual basis for the plea in the complaint with the understanding as party to a crime.

¶ 62. Because the complaint was not amended to reflect party-to-a-crime liability, the factual basis for Howell's guilty plea to aiding and abetting the crime was absent from the complaint. Thus, defense counsel's stipulation to the factual basis in the complaint is insufficient to fulfill the circuit court's duty to personally ascertain that a factual basis exists for the crime charged. The complaint simply states that Pearson "personally observed the above-named defendant [Howell] approaching him armed with a rifle, point this rifle at him and shoot him."

¶ 63. The information is even less informative about the crime charged and similarly does not reflect party-to-a-crime liability. Even if Howell's counsel stipulated to the facts elicited at the preliminary hearing, that testimony is insufficient to provide a factual basis for the plea.[38]

¶ 64. The circuit court did not inquire into how Howell "assisted" Sharp, how "approaching" the victim constituted assistance, or how either alleged action was sufficient to establish that Howell aided and abetted Sharp in the shooting. That Howell observed Sharp with a firearm does not alone subject Howell to party-to-a-crime liability. The circuit court did not inquire into Howell's knowledge about Sharp's intentions or

[38] At the preliminary hearing, Pearson was the only witness and he testified that Howell was the actual shooter. There is no discussion of Sharp's involvement or how Howell and Sharp interacted. There is also no testimony as to why Pearson was at the location of the shooting and thus no indication that Howell arranged for Pearson to be there.

when Howell first observed the firearm. The circuit court also did not inquire into who procured the firearm or brought it to the scene. Nor did the circuit court determine whether Howell had the requisite intent for party-to-a-crime liability.

¶ 65. In *Brown*, we explained that "[p]robing questions may not always be necessary, but they help to ensure a defendant's understanding and they help to complete the hearing record."[39] Here, the plea colloquy raises more questions than it answers about what actually happened regarding Howell, Sharp, and Pearson on the day of the shooting.

¶ 66. In light of the late amendment to the charge adding party-to-a-crime liability and without an accompanying change in the factual basis in the complaint, the circuit court, pursuant to Wis. Stat. § 971.08 and *Bangert*, should have probed deeper to ensure that there was a sufficient factual basis for the plea that was now based on the theory that Howell may not have been the shooter and instead only assisted the shooter. It was important for the circuit court to determine at the plea colloquy what assistance Howell provided and whether that assistance was provided with the requisite intent, especially since the complaint, information, and preliminary hearing did not address aider and abettor liability.

¶ 67. We repeat our comments in *Lackershire:* "[T]he obligation that the circuit court establish a sufficient factual basis helps ensure that the defendant's plea is knowing and intelligent. The factual basis requirement 'protects a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.' . . .

---

[39] *Brown,* 293 Wis. 2d 594, ¶ 77.

A defendant's failure to realize that the conduct to which she pleads guilty does not fall within the offense charged is incompatible with the plea being 'knowing' and 'intelligent.' "[40]

¶ 68. We thus conclude that Howell's motion satisfies the first prong of *Bangert* by making a prima facie demonstration that the plea colloquy was defective in establishing Howell's understanding of the nature of his criminal liability as a party to a crime and in establishing a factual basis for the crime charged.

¶ 69. We further conclude that Howell's postconviction motion satisfies the second prong of *Bangert*. It alleges that the plea was not knowingly, intelligently, and voluntarily entered. Howell's motion states that Howell "believed that he was guilty as party-to-a-crime simply for failure to stop the crime from occurring"; that he "did not know that being guilty as party to a crime required more than his presence and his failure to act to stop the shooting"; and that he "never would have pled guilty had he realized that his mere presence was not enough . . . ." In short, Howell's motion sufficiently alleges that he in fact did not know or understand the information that should have been provided at the plea hearing to support his guilty plea.

¶ 70. In a *Bangert* motion, a circuit court and a reviewing court examine only whether "a defendant is entitled to an evidentiary hearing when the court errs at a plea hearing."[41] The State cannot circumvent a defendant's right to an evidentiary hearing under

---

[40] *State v. Lackershire,* 2007 WI 74, ¶ 35, 734 N.W.2d 23, 301 Wis. 2d 418 (internal citations omitted).

[41] *Hampton,* 274 Wis. 2d 379, ¶ 72.

*Bangert* by arguing that based on the record as a whole the defendant, despite the defective plea colloquy, entered a constitutionally sound plea. "If the motion establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations, the court *must hold* a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy."[42] The State will have the opportunity at the evidentiary hearing to demonstrate that Howell understood his party-to-a-crime liability.

■■■■■■■

¶ 71. In sum, we conclude that Howell's motion is sufficient under *Bangert* and that Howell is entitled to an evidentiary hearing on his *Bangert* claims. We remind circuit courts (and the State) to ensure that the *Bangert* requirements are met. " 'This court cannot overemphasize the importance of the trial court's taking great care in ascertaining the defendant's understanding' of the nature of the charges and the constitutional rights being waived."[43] This court understands "that most trial judges are under considerable calendar constraints, but it is of paramount importance that judges devote the time necessary to ensure that a plea meets the constitutional standard. The plea hearing colloquy must not be reduced to a perfunctory exchange. It demands the trial court's 'utmost solicitude.' "[44]

---

[42] *Brown*, 293 Wis. 2d 594, ¶ 40 (emphasis added).

[43] *Id.*, ¶ 32 (quoting *Bangert*, at 270).

[44] *Id.*, ¶ 33 (quoting *Bangert* at 278–79 (quoting *Boykin*, 395 U.S. at 243–44)).

¶ 72. Before moving to our second inquiry, namely whether Howell's motion satisfies *Nelson/Bentley,* we must briefly discuss a defendant's ability to invoke both *Bangert* and *Nelson/Bentley* in the same motion.

¶ 73. **A Dual Bangert and Nelson/Bentley Motion.** A defendant may invoke both *Bangert* and *Nelson/Bentley* in a single postconviction motion to withdraw a plea of guilty or no contest.[45] *Nelson/Bentley* and *Bangert,* although different, are not inconsistent. Both involve requests for an evidentiary hearing on a motion to withdraw a plea of guilty or no contest. In both the defendant has the burden of making a showing in the motion to withdraw the plea to justify an evidentiary hearing.[46]

¶ 74. The *Bangert* and *Nelson/Bentley* motions, however, are applicable to different factual circumstances.[47] A defendant invokes *Bangert* when the plea colloquy is defective; a defendant invokes *Nelson/Bentley* when the defendant alleges that some factor extrinsic to the plea colloquy, like ineffective

---

[45] *Brown,* 293 Wis. 2d 594, ¶ 42. In *Brown,* we explained:

> When the defendant files a dual purpose motion—that is, a *Bangert* motion combined with a *[Nelson/Bentley]* motion that alleges ineffective assistance of counsel or some other problem affecting the plea that is extrinsic to the plea hearing record—the court should make an initial ruling on whether an evidentiary hearing is required and, if it is, what the hearing will address.

*Id.*

[46] *Hampton,* 274 Wis. 2d 379, ¶ 56 (discussing the similarities of motions brought under *Bangert* and *Nelson/Bentley*).

[47] *Id.*

assistance of counsel or coercion, renders a plea infirm.[48] A "dual purpose" motion would include allegations of a defective plea colloquy and allegations of some other injustice that renders the plea infirm. We again state that a defendant may include both *Bangert* and *Nelson/Bentley* claims in a single motion to withdraw a plea of guilty or no contest.

¶ 75. **A Nelson/Bentley Motion.** To entitle a defendant to an evidentiary hearing under *Nelson/Bentley,* a defendant must "allege[] facts which, if true, would entitle the defendant to relief .... However, if the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusionary allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing."[49] A defendant's *Nelson/Bentley* motion must meet a higher standard for pleading than a *Bangert* motion.[50] If the

---

[48] *Brown,* 293 Wis. 2d 594, ¶ 42. *Bentley,* 201 Wis. 2d at 311 (ineffective assistance of counsel); *State v. Basley,* 2006 WI App 253, ¶ 9, 298 Wis. 2d 232, 726 N.W.2d 671 (coercion by defense counsel).

[49] *Nelson v. State,* 54 Wis. 2d 489, 497–98, 195 N.W.2d 629 (1972).

[50] We reject Howell's contention that the court changed the *Bangert* and *Nelson/Bentley* tests when it wrote the following in *Hampton:*

> The defendant must make specific allegations [in a *Bangert* motion] such as "at no point during the plea colloquy did the court explain that it was not bound by the plea bargain and was free to disregard the prosecutor's sentencing recommendation." In addition, the defendant must allege that he did not in fact understand that the court was not bound by the plea agreement because that

385

defendant's motion and the record fail to meet these requirements, a circuit court in its discretion may grant or deny an evidentiary hearing.

¶ 76. In other words, a defendant first must allege sufficient, nonconclusory facts in his motion that, if true, would entitle him to relief. If the defendant fails to meet the pleading requirements, the circuit court in its discretion may nevertheless grant or deny an evidentiary hearing. If the defendant meets the pleading requirements, the circuit court then must look to the record.

¶ 77. A well-pled complaint may be denied without an evidentiary hearing if the record as a whole conclusively demonstrates that relief is not warranted.[51] Unless the record conclusively demonstrates

---

information/explanation was not provided. *We think a motion of this nature passes the test of Nelson and Bentley: a motion to withdraw a plea that alleges facts which, if true, would entitle the defendant to relief. The allegation that the defendant did not understand is, admittedly, conclusory; but the allegation raises a question of fact and perhaps law that requires resolution.*

*Hampton,* 274 Wis. 2d 379, ¶ 57 (emphasis added).

We disagree with Howell's claim that this language renders unnecessary the "non-conclusory" requirement of the *Nelson/Bentley* test. First, *Hampton* was a *Bangert* case, and thus did not change the law of the *Nelson/Bentley* line of cases. Second, the language does not eliminate the "non-conclusory" requirement of *Nelson/Bentley;* rather, it explains that certain conclusory statements are acceptable in *Bangert* cases. *See also State v. Goyette,* 2006 WI App 178, ¶ 17 n.8, 296 Wis. 2d 359, 722 N.W.2d 731 (citing to this passage and explaining that "the second *Bangert* prong is satisfied by a conclusory allegation that the defendant did not know or understand").

[51] The *Nelson* court addressed a postconviction motion to withdraw a guilty plea pursuant to Wis. Stat. § 974.06, which governs collateral attacks brought after the time for appeal has

that the defendant is entitled to no relief, the circuit court must grant an evidentiary hearing. If the record conclusively demonstrates that the defendant is not entitled to relief, then the circuit court in its discretion may grant or deny an evidentiary hearing.[52]

expired. This statute provides that "[u]nless the motion and the files and *records of the action conclusively show that the person is entitled to no relief,* the court shall ... grant a prompt hearing." Wis. Stat. § 974.06(3)(c).

The *Bentley* court extended the *Nelson* test to other post-conviction motions to withdraw guilty pleas, including those brought pursuant to Wis. Stat. (Rule) § 809.30 and § 974.02. The *Bentley* court, although recognizing the difference between a § 974.02 and a § 974.06 motion, announced that "our standard of review is dictated by *Nelson.*" *Bentley,* 201 Wis. 2d at 310. The *Bentley* court explained that "the test is the same for a direct challenge to the conviction on a motion to withdraw a guilty plea as for a collateral challenge pursuant to § 974.06." *Id.* at 310 n.6 (internal citations omitted).

The *Bentley* court interpreted *Nelson* as follows: "*If the motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing.*" *Bentley,* 201 Wis. 2d at 310, citing *Nelson,* 54 Wis. 2d at 497 (emphasis added). In phrasing the *Nelson* test this way, *Bentley* might be interpreted to make an evidentiary hearing mandatory whenever the motion contains sufficient, nonconclusory facts, even if the record as a whole would demonstrate that the defendant's plea was constitutionally sound. Such an interpretation of *Nelson* and *Bentley,* however, is not correct. The correct interpretation of *Nelson/Bentley* is that an evidentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief, even if the motion alleges sufficient nonconclusory facts.

[52] An adequate and accurate plea colloquy does not foreclose a *Bentley* challenge. The court of appeals recently explained that "[t]he State is simply incorrect that a good and sufficient plea colloquy, one that concededly complies with the

¶ 78. **Standard of Appellate Review.** Under *Nelson/Bentley,* a reviewing court determines as a matter of law, independently of the circuit court and court of appeals but benefiting from their analyses, whether a defendant's motion to withdraw a guilty plea "on its face alleges facts which would entitle the defendant to relief,"[53] and whether the record conclusively demonstrates that the defendant is entitled to no relief.

¶ 79. A reviewing court reviews a circuit court's exercise of its discretion to grant or deny a hearing when as a matter of law the defendant's motion fails to allege sufficient facts entitling the defendant to relief or presents only conclusory allegations, or the record, as a matter of law, conclusively demonstrates the defendant is not entitled to relief. This review determines whether the circuit court erroneously exercised its discretion.[54]

¶ 80. **Howell's Nelson/Bentley Motion.** We begin by observing that Howell's motion itself did not clearly distinguish between the claims under *Bangert* of a defective plea colloquy and the claims under *Nelson/Bentley* of problems extrinsic to the plea colloquy. Rather, Howell's motion generally alleged that he

requirements of *Bangert,* can be relied on to deny an evidentiary hearing for a defendant who seeks to withdraw his or her plea on non-*Bangert* grounds. The entire premise of a *Nelson/Bentley* plea withdrawal motion is that something not apparent from the plea colloquy may have rendered a guilty or no contest plea infirm." *State v. Basley,* 2006 WI App 253, ¶ 15, 298 Wis. 2d 232, 726 N.W.2d 671.

[53] *Bentley,* 201 Wis. 2d at 310 (citing *Nottelson v. DILHR,* 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980) (whether facts fulfill a particular legal standard is a question of law)).

[54] *Nelson,* 54 Wis. 2d at 497–98. *See* ¶¶ 76–78, *supra.*

388

misunderstood the nature of party-to-a-crime liability, listed the various sources of this misunderstanding, and requested an evidentiary hearing to demonstrate Howell's misunderstanding.

¶ 81. We need not examine in the instant case whether allegations in the postconviction motion to withdraw the guilty plea are sufficient under *Nelson/Bentley* to entitle Howell to an evidentiary hearing. Several of Howell's claims appropriately fall under *Nelson/Bentley* because they relate to problems other than a defective plea colloquy. That part of Howell's motion that might be considered a *Nelson/Bentley* motion raises the same legal issue as his *Bangert* claim, namely that his plea was not knowing, intelligent, or voluntary because he misunderstood the nature of party-to-a-crime liability.

¶ 82. The motion asserts that between June 9, the original date of trial, and the plea colloquy, Howell spoke with his trial counsel about the amended party-to-a-crime charge, and as a result of the conversation, Howell developed a misunderstanding about what was necessary for him to be convicted of being party to the crime of first degree reckless injury. The evidentiary matter under Howell's *Nelson/Bentley* claim, namely that Howell misunderstood party-to-a-crime liability because of conversations with his attorney, will likely be addressed at the *Bangert* hearing. At the *Bangert* hearing, both the State and Howell may present evidence extrinsic to the record to demonstrate whether Howell properly understood the concept of party-to-a-crime liability despite the defective plea colloquy. Consequently, we need not and do not assess the validity of Howell's allegations under the *Nelson/Bentley* line of cases.

389

¶ 83. We recognize that, under other circumstances, a court may have to analyze a defendant's dual purpose motion under both the *Bangert* and the *Nelson/Bentley* standards to determine whether an evidentiary hearing is warranted on those claims and the nature of the hearing.

¶ 84. In sum, having already recognized that Howell is entitled to an evidentiary hearing under *Bangert* on whether his plea was knowing, intelligent, and voluntary because Howell misunderstood the nature of party-to-a-crime liability, we need not determine whether Howell has made sufficient allegations under *Nelson/Bentley* to warrant an evidentiary hearing under *Nelson/Bentley*. The allegations in his motion are sufficient under *Bangert* to entitle Howell to the relief sought, that is, an evidentiary hearing that will address whether Howell properly understood the nature of party-to-a-crime liability.

¶ 85. We need write no further. We do, however, point out that were we to consider Howell's motion as a *Nelson/Bentley* motion rather than as a *Bangert* motion, we would have to determine whether as a matter of law the record conclusively demonstrates that Howell is entitled to no relief. Although the statements made by Howell's trial counsel at sentencing give pause, the record as a whole does not conclusively demonstrate that Howell is entitled to no relief.

* * * * *

¶ 86. For the reasons set forth, we hold that Howell is entitled under *Bangert* to an evidentiary hearing regarding his motion to withdraw his guilty plea. As required by *Bangert,* the motion makes a prima facie showing that the circuit court's plea colloquy did not conform with Wis. Stat. § 971.08 and judicially mandated procedures and includes the allegation that

Howell did not know or understand information that should have been provided at the plea colloquy.[55]

¶ 87. In analyzing Howell's motion under *Nelson/Bentley*, we conclude that the part of the motion that could be considered a *Nelson/Bentley* motion raises the same legal issue as the claim under *Bangert*, namely that his plea was not knowing, intelligent, and voluntary because Howell misunderstood the concept of party-to-a-crime liability. The evidentiary matter presented in the *Nelson/Bentley* portion of the motion, namely that Howell misunderstood party-to-a-crime liability based on conversations with his attorney, will likely be addressed at the *Bangert* hearing. Consequently, we need not assess the validity of Howell's *Nelson/Bentley* claim. Howell's motion entitles him to an evidentiary hearing under *Bangert* on the issue of whether his plea was knowing, intelligent, and voluntary.

¶ 88. We thus hold that Howell's motion warrants an evidentiary hearing under *Bangert* to determine whether he can withdraw his guilty plea because it was not knowing, intelligent, or voluntary. The burden is on the State at the evidentiary hearing in the instant case on the *Bangert* motion to prove by clear and convincing evidence that Howell's plea was knowing, intelligent, and voluntary.

¶ 89. Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for an evidentiary hearing under *Bangert* to determine whether Howell is entitled to withdraw his guilty plea.

---

[55] *Brown,* 293 Wis. 2d 594, ¶ 2 (citing *Hampton,* 274 Wis. 2d 379, ¶ 46; *Bangert,* 131 Wis. 2d at 274).

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 90. JON P. WILCOX, J. *(dissenting).* Judges and justices are umpires, not pinch hitters.[1] Nonetheless, the majority in this case takes their second at-bat this term for a defendant that failed to make a motion alleging a lack of a factual basis pursuant to Wis. Stat. § 971.08(1)(b). *See State v. Lackershire,* 2007 WI 74, 734 N.W.2d 23, 301 Wis. 2d 418.

¶ 91. Previously, the plea-withdrawal procedure empowered defendants to make a motion alleging how a plea-taking court failed to satisfy a plea colloquy duty. That motion permitted the defendants to have the court deal with their allegation directly.

¶ 92. Now, judges considering defendants' motions have the added obligation to be on the lookout for substantial questions and red flags in the record. That role used to be fulfilled by the defendants and their counsel.

¶ 93. Because I conclude defendants and defense counsel are still better suited than judges to spot substantial questions in a plea colloquy, I respectfully dissent.

---

[1] Chief Justice John G. Roberts, Jr., as nominee to be the Chief Justice of the United States, stated the following in his opening statement:

> Judges and Justices are servants of the law, not the other way around. Judges are like umpires. Umpires don't make the rules, they apply them. The role of an umpire and a judge is critical. They make sure everybody plays by the rules, but it is a limited role. Nobody ever went to a ball game to see the umpire.

*Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States,* 109th Cong. 109–158 (2005).

¶ 94. During a plea colloquy, a circuit court judge has a number of duties. One of the duties is to "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." Wis. Stat. § 971.08(1)(b). The court has referred to this as the factual basis requirement. *State v. Thomas,* 2000 WI 13, ¶ 14, 232 Wis. 2d 714, 605 N.W.2d 836. If a defendant believes that a court failed to satisfy its § 971.08(1)(b) obligation, he or she may allege that failure in a motion to withdraw his or her plea.

¶ 95. Howell never made a motion that alleged that the plea-taking court failed to satisfy the factual basis requirement. Rather, in his motion, Howell alleged that "he failed to understand what the state had to prove to find him guilty as a party to a crime of the charge of first degree reckless injury." Howell's allegation arises out of an obligation distinct from the factual basis requirement of § 971.08(1)(b). It arises out of a plea-taking court's duty under Wis. Stat. § 971.08(1)(a) to "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."

¶ 96. Nevertheless, the majority here ascribes to Howell's motion an allegation that the factual basis accepted by the circuit court was insufficient. Majority op., ¶ 57. The majority does this in the face of Howell's own argument. While the majority spends pages discussing the § 971.08(1)(b) factual basis requirement, Howell did not do so in his brief to the court. Actually, a reference to § 971.08(1)(b) never even appears in his brief.

## II

¶ 97. Howell never alleged that the judge that took his plea failed to satisfy the factual basis requirement. Nevertheless, this court is stepping in on Howell's behalf. It concludes that the judge reviewing Howell's plea withdrawal motion erred in not finding that the plea-taking judge did not satisfy the § 971.08(1)(b) factual basis requirement. Appellate courts that fail to recognize when judges are humbly applying the rules, rather than engaging in the work properly left to the advocates, undermine the proper role of the judiciary.

¶ 98. For the forgoing reasons, I respectfully dissent.

¶ 99. I am authorized to state that Justices DAVID T. PROSSER and PATIENCE DRAKE ROGGENSACK join this opinion.

¶ 100. DAVID T. PROSSER, J. (*dissenting*). The world will not end if Andrae Howell is given an evidentiary hearing on his motion to withdraw his plea. But the administration of justice in Wisconsin courts will suffer because, in awarding Howell a *Bangert*[1] hearing, the majority adds a new responsibility for judges in a plea colloquy, fudges the distinction between *Bangert* motions and non-*Bangert* motions for plea withdrawal, unfairly shifts the burden of proof at the evidentiary hearing to the State, and gives credibility to Howell's wholly unsubstantiated allegations that another person, not Howell, shot and injured Marcus Pearson. For these reasons, I respectfully dissent.

---

[1] *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

I

¶ 101. On July 12, 2004, Andrae D. Howell entered a plea of guilty to the charge of first-degree reckless injury, as a party to the crime. He was sentenced on August 31, 2004.

¶ 102. On March 2, 2005, more than six months after sentence, Howell moved to withdraw his plea. His motion was denied by the circuit court without an evidentiary hearing. This decision was affirmed by the court of appeals in a scholarly opinion on August 31, 2006.

¶ 103. The court of appeals decision is now reversed, and the cause is remanded to the circuit court "for an evidentiary hearing under *Bangert* to determine whether Howell is entitled to withdraw his guilty plea." Majority op., ¶ 89. "The burden is on the State at the evidentiary hearing . . . to prove by clear and convincing evidence that Howell's plea was knowing, intelligent, and voluntary." *Id.*, ¶ 9.

¶ 104. In making this decision, the court second-guesses the work of several judges and does so on extremely flimsy grounds.

¶ 105. Let us go back to the beginning.

¶ 106. On Sunday, February 8, 2004, Marcus Pearson, then 23, was sitting in his car on the street near 3124 West Oriole Drive in Milwaukee. It was about noon. Suddenly, a man approached Pearson with a rifle, pointed the rifle, and shot him, fracturing his right middle finger and right lower leg. Pearson succeeded in driving off, past the shooter, and immediately headed to a hospital.

¶ 107. On February 12, 2004, the State filed a criminal complaint against Howell, then 30, alleging that he was the shooter in the February 8 incident.

¶ 108. On February 20, 2004, Milwaukee County Court Commissioner Audrey Y. Brooks presided at a preliminary examination at which Pearson was the only witness. Pearson testified that while he was sitting in the driver's seat of his car, Howell appeared on the sidewalk near a discarded couch, about 30 to 35 feet away. Pearson said he had known Howell—"Dray"—for about four years, and that "Dray" shot him with a rifle. "The first shot came right through the windshield. . . . I mean the windshield cracked," he said. A second shot went through the car door as Pearson drove away. On cross-examination Pearson was asked if he was certain that Howell was the person who shot him. "Positive," he answered. "Looked dead at him. He looked dead at me."

¶ 109. After Howell was bound over for trial, the State gave defense attorney Michael Backes the Information, an "offer" letter, and, to use Backes's words, "sizeable amounts of discovery."

¶ 110. On March 2, 2004, Milwaukee County Circuit Judge Richard J. Sankovitz held a scheduling conference. He set a final pretrial conference for May 17 and a jury trial for June 9. This scheduling conference was off the record. The defendant was not present.

¶ 111. A year earlier, on March 19, 2003, Andrae Howell was convicted of a felony. On April 15, 2003, he was sentenced to one year of confinement in the Wisconsin State Prison, but this sentence was stayed and he was placed on probation for three years. Thus, on February 8, 2004, Howell was on probation. On or about April 27, 2004, Howell's probation was revoked in response to the Pearson shooting, and he was sentenced to prison. Howell's status is repeatedly alluded to in the record of this case, but there is no transcript or written decision from the probation revocation proceedings in the record.

¶ 112. Attorney Backes represented Howell at the February 20 preliminary hearing and the July 12 plea. He represented Howell at two hearings between these dates. Thus, he may have represented Howell during probation revocation. The record does not tell us. In any event, however, Backes would have been familiar with the fact that Howell's probation had been revoked. Howell had to be brought from the Dodge Correctional Institution for the May 17 hearing and for the June 9 hearing. At the June 9 hearing, there was talk of getting Howell appropriate clothes for the trial.

¶ 113. On May 17, there was a final pretrial conference off the record. Then the court went back on the record. The court said in part, in the presence of Howell:

> The parties know who their witnesses are . . . . The defense indicated there may be a witness or two that needs to be interviewed between now and the trial date . . . . *The defense in this case is that Mr. Howell was present at the scene, but was not the shooter.* The State indicated off the record that it had advised Mr. Howell at the outset of the proceedings that if the case can be resolved on the charge that was issued in the Information, that . . . it would be, but if the case went to trial, the State would be filing additional charges . . . [namely] one count of attempted first degree intentional homicide while armed and one count of being a felon in possession of a firearm.

(Emphasis added.) Attorney Backes replied that he had "reviewed that issue with Mr. Howell this morning again and he understands."

¶ 114. On June 9, the scheduled date of trial, the court indicated that there had been conversations with counsel off the record. On the record, the court said: "[A] witness that Mr. Backes has not previously had

contact with seems to have surfaced here today and has information that Mr. Backes needs to explore." Attorney Backes then responded:

MR. BACKES: I've been informed that the State is going to amend charges not only upward but also to expand the limits of liability to my client by including party to a crime.

My defense of the case has been the allegation that he's the shooter. My whole theory that I've come—that I'm prepared to try including providing clothes to show that he was not the shooter, all my efforts in preparation for trial are somewhat meaningless at this point. *There's a whole new theory.*

Of course, in addition, the party we've been trying to find is now here and I did talk to him and he's prepared to testify and that is certainly a factor . . .

THE COURT: Would the party to a crime wrinkle also mean that there's a possibility that the case won't even be tried?

MR. BACKES: That is a possibility especially as I review what Mr. [Sharp] will be testifying to.

(Emphasis added.) Assistant District Attorney Kenneth Berg then interjected:

MR. BERG: The statement by Mr. [Sharp] . . . who is the witness who's here[,] was also freely given to Mr. Backes in the statement he gave to the police. I understand that apparently this case will be adjourned, but I want the Court to know that we are fully prepared to try the case.

398

MR. BACKES: Well . . . if they don't want to amend charges to include party to a crime, I'd now be more than happy to reconsider my position.

THE COURT: Party to a crime is not much of a surprise. It might be enough of a surprise to warrant an adjournment, but I don't think Mr. Howell, when he looks at the ultimate resolution of the case, should be so surprised by how it gets resolved if it goes down as a party to a crime.

. . . .

There are a bunch of witnesses here who came to see the State put on its case today and I know that they're disappointed by virtue of the fact that the case isn't being tried, but given this development where *the State has a different theory for holding you liable on evidence that doesn't seem to be accounted for by your defense* in the case, it's quite possible that there won't even be a trial in this case and I think that it's better to let you and Mr. Backes digest this change in the charges in the case and decide whether you really are intent upon a trial.

. . . .

Rather than scheduling the trial at this point what I'm going to do is set a status date so that you and Mr. Backes can talk about the case and you can decide whether you want a trial or whether you want to try to resolve the case in a different way.

(Emphasis added.)

399

¶ 115. On July 12, the parties appeared for a plea. The first question the court asked was: "Have there been negotiations?" Assistant District Attorney Berg responded that there had been negotiations. The State was amending the charge to add party to a crime. However, it was not pursuing other charges. Berg said he understood that the defendant would be entering "a plea of other than not guilty. Both sides will be free to argue at sentencing." Defense attorney Backes agreed to the State's summary of negotiations.

## II

¶ 116. The above stated facts constitute the *record* of this case at the start of the plea colloquy. The record does not include any police report, the statements of any witnesses, the statement of the defendant, or a transcript or any documentation from the revocation of Howell's probation. However, all these documents would have been available to the defendant and his attorney. The record makes clear that the defendant had multiple opportunities over several months to confer with his attorney, to digest developments, and to plot strategy.

¶ 117. Attorney Backes referred to "Joseph" as early as February 20 in the preliminary hearing, but the *record* tells us nothing about Joseph Sharp (except that he was a cousin of the defendant) or what he might say as a witness. The clerk noted on May 17 that the State intended to call ten witnesses, the defense, five. We do not know whether Joseph Sharp was a State witness, a defense witness, or was not listed as a witness. We do know that the parties were in continual negotiation.

¶ 118. A fair reading of the record is that Howell planned to defend against the specific charge that he was the shooter. This defense was substantially undermined, however, when the State broadened the charge by adding party to a crime, for party to a crime would

400

have ensnared Howell, even if he were not the shooter, *if* he conspired to plan the crime or *if* he knowingly assisted another shooter. The "whole new theory" that Attorney Backes referred to was party to a crime, *not* an allegation that Joseph Sharp was the shooter. There is no evidence in the record *at this point* suggesting that Howell did not know anything in advance about the confrontation with Pearson or that he was surprised by the shooting.

### III

¶ 119. The following selected passages appear in the plea colloquy:

| THE COURT: | Is there any objection to the amendment to the information? |
|---|---|
| MR. BACKES: | No. |
| THE COURT: | Would it be fair to state that the amendment to the information comprises the prospect that at trial the evidence might show that Mr. Howell didn't pull the trigger, but that *he assisted people in putting the victim in a place where he could be shot by somebody else?* |
| MR. BACKES: | That's a correct statement. |
| THE COURT: | Mr. Howell, do you agree with that? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | So, there is no objection to the amendment? |
| THE DEFENDANT: | No, Your Honor. |

| THE COURT: | Mr. Howell, I'm going to grant the State's motion to amend the information in this case. You're now charged with being a party to the crime of first degree reckless injury. Do you understand that? |
|---|---|
| THE DEFENDANT: | Yes, Your Honor. |

(Emphasis added.)

¶ 120. When the court used language "that [Howell] assisted people in putting the victim in a place where he could be shot by somebody else," the court was likely responding to something the parties had said to the court off the record about the offense. The language implies that Howell helped "set up" the victim. Howell's attorney and Howell himself agreed that the court's statement was correct.

¶ 121. The notion that the Pearson shooting was a "set up" was strongly implied at the subsequent sentencing hearing by Assistant District Attorney Berg:

> Mr. Pearson always wondered . . . . This is one of these cases where determining exactly all of the levels of responsibility is difficult because there were clearly people including a girlfriend of his who wanted him to go to that location [on Oriole Drive].

> He very accurately has indicated he goes to a very specific location to meet a young lady who he's had a relationship with. And at that location, the location that this Court can see from the Complaint, he's nearly killed. His car was shot at numerous times. He is hit twice.

¶ 122. If this rendition of the facts was shared with the court at some point before the plea hearing, it would have made perfect sense for the court to suggest that Howell "assisted people in putting the victim in a place where he could be shot by somebody else."

402

¶ 123. Later in the colloquy, the court explained the offense with the extra element of party to a crime.

THE COURT: Do you understand that before you can be found guilty the State would be required to prove that on February 8th of this year someone caused great bodily harm to Marcus, M-A-R-C-U-S, Pearson, P-E-A-R-S-O-N. The State would have to prove that whoever did this did it by criminally reckless conduct. That means that they were engaged in conduct that the person knew at the time to create a substantial and unreasonable risk of death or great bodily harm to Mr. Pearson, and was aware that they were creating such a risk. The State would have to prove that the person who shot him, shot him in circumstances which showed utter disregard for human life. *And then the State would have to prove either that you were the person who did all those things or that you intentionally assisted someone else who was doing those things, knowing what they were doing.*

Do you understand what the State would have to prove?

THE DEFENDANT: Yes.

(Emphasis added.) These alternative explanations by the court of party to a crime, including that "you intentionally assisted someone else who was doing those things

403

[reckless injury], knowing what they were doing," are a close analogue to Wis JI—Criminal 400. *See* majority op., ¶ 46.

¶ 124. Then the court went into the facts:

THE COURT: May I accept as true the facts stated in the complaint?

MR. BACKES: *We would stipulate to the factual basis for the plea in the complaint with the understanding as party to a crime.*

THE COURT: So, if the case came to trial what are the two possibilities that the State could prove as far as Mr. Howell's involvement in the shooting?

MR. BERG: The two possibilities would be, Judge, that, one, he is the actual shooter, which would have been the victim's actual testimony; the other is what defense counsel and I have discussed. *His position and his argument* to the court will be that his cousin was the shooter and *he was there with him, observed him with the gun as they got out of the car and* would have *approached the victim in this situation.*

THE COURT: Are those facts—or may I accept those facts as true?

MR. BACKES: *We would stipulate to that factual basis and those are the facts upon which Mr. Howell has indicated his guilt to me as well.* Is that correct?

THE DEFENDANT: Yes.

THE COURT: So, Mr. Howell, you're not necessarily agreeing that you shot Mr. Pearson; *that you are agreeing that you and your cousin went there* and that you approached Mr. Pearson *and by doing so you assisted your cousin in shooting him?*

THE DEFENDANT: Yes.

(Emphasis added.) In this part of the colloquy, defense counsel twice stipulates to the facts, and the defendant agrees with him. The Assistant District Attorney set out *Howell's own theory* that he knew his cousin had a gun as they got out of the car, as an alternative to the theory that Howell was the shooter. Howell confirmed this theory in his personal allocution at sentencing.[2]

¶ 125. Howell pled "guilty" to the offense. He said he was making his decision to plead guilty voluntarily. His attorney said he was satisfied that Howell was entering his plea freely and intelligently.

## IV

¶ 126. The majority concludes that Howell has made a successful *Bangert* motion to withdraw his plea. Under *Bangert,* a defendant may move to withdraw his plea when the procedures outlined in Wis. Stat. § 971.08 are not undertaken or other court-mandated duties at the plea hearing are not followed. *State v. Hampton,* 2004 WI 107, ¶ 46, 274 Wis. 2d 379, 683 N.W.2d 14. The burden rests upon the defendant to

---

[2] Howell stated: "I did not get out of there *knowing that he had a gun.*" (Emphasis added.)

make a pointed showing that the plea was accepted without the court's conformity with the statute or other mandatory procedures. *State v. Bangert,* 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986). When the defendant's motion shows a violation of Wis. Stat. § 971.08(1)(a) or (b) or other mandatory duties *and* alleges that he in fact did not know or understand the information that should have been provided at the plea hearing, the burden shifts to the State to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary. *Hampton,* 274 Wis. 2d 379, ¶ 46.

¶ 127. A pointed showing means pointing to errors or omissions in the *record* to show a defect. "To obtain an evidentiary hearing based upon defects in the plea colloquy, the defendant will rely on the plea hearing record." *Id.,* ¶ 47. The defendant must point to a specific defect in the plea hearing transcript that constitutes an error by the court. *Id.,* ¶ 57.

¶ 128. There are elements of the plea colloquy that always must be present, such as the waiver of enumerated constitutional rights. There are other elements that are employed as necessary. *Id.,* ¶ 49. The omission of an explanation or inquiry from the colloquy is not a defect unless that explanation or inquiry was mandatory because of the facts.

¶ 129. Howell filed a motion to withdraw his plea on March 2, 2005. His motion consisted of 17 numbered paragraphs accompanied by an affidavit from his attorney. Only two of the paragraphs, ¶ 5 and ¶ 6, deal with alleged defects in the plea colloquy. Nothing in the accompanying affidavit identifies a defect in the plea colloquy. Paragraphs 5 and 6 read as follows:

> 5. The plea colloquy in this case was brief. The Court allowed the state to amend the information to

add the "party to a crime" modifier. *See* Transcript of 7/12/04 at 2. The Court noted that the amendment was occurring because the state might be able to show that Mr. Howell "assisted people in putting the victim in a place where he could be shot by somebody else." *Id.* The Court ascertained that Mr. Howell understood that the information was being added and that he did not object. *Id.* at 3. The Court also informed Mr. Howell of the elements of reckless injury and that "the State would have to prove either that [he was] the person who did all those things or that [he] intentionally assisted someone else who was doing those things, knowing what they were doing." *Id.* at 5–6. *None of these statements indicated whether simply failing to act to prevent the crime was sufficient assistance to be guilty as party to a crime.*

 *6. Mr. Howell in fact did not understand the parameters of party-to-a-crime liability. He believed that he was guilty as party-to-a-crime simply for failure to stop the crime from occurring. See* Affidavit at 2–3 ¶¶ 3g-3h. Moreover, the state at the plea hearing took the position that the two possibilities of Mr. Howell's involvement were either that he was the shooter or that, as was Mr. Howell's position, "his cousin was the shooter and he was there with him, observed him with the gun as they got out of the car and would have approached the victim in this situation." Transcript of 7/12/05 at 7. The state's statement reinforced Mr. Howell's belief that mere presence was sufficient.

(Emphasis added.)

 ¶ 130. The critical passage in paragraph 5 is that "[n]one of these statements indicated whether simply failing to act to prevent the crime was sufficient assistance to be guilty as party to a crime." In effect, Howell claims that the court's failure to explain that being at the scene of a crime does not make a person a party to

the crime, is a defect in the plea colloquy, a defect that was solely the judge's fault.

¶ 131. There is, in the jury instructions a statement that a court may use in certain cases: "[A] person does not aid or abet if (he) . . . is only a bystander or spectator and does nothing to assist the commission of a crime." Wis JI—Criminal 400 EXAMPLE. The instructions make plain, however, that this sentence is to be read "*if* supported by the evidence." *Id.* (emphasis added). In this case, Judge Sankovitz had no reason to believe that Howell was claiming mere presence at the scene with no prior knowledge of what was going to happen to Pearson. Howell acknowledged as correct "putting the victim in a place where he could be shot." He acknowledged seeing a gun as he got out of a car. This evidence did not impose on Judge Sankovitz a duty to make inquiry or give explanation that would rule out purely innocent conduct.

¶ 132. One might argue that evidence *outside* the plea colloquy and *after* the plea colloquy created the basis for a claim of misunderstanding, but that would make Howell's motion a non-*Bangert* motion. *See Hampton,* 274 Wis. 2d 379, ¶ 61. Nothing in the *record* of the plea colloquy or the *record* before the plea colloquy compels or even suggests that the circuit court was required to make the inquiry the majority now demands. To hold that the failure to make such an inquiry was a *Bangert* violation is not justified by the facts and, as precedent, opens many otherwise sufficient plea colloquies to new attack.

¶ 133. The circuit court's discussion of the evidentiary basis for the offense is also not defective. First, there is a longstanding rule that when there is a negotiated plea, as in this case, the circuit court need not go to the same length to determine whether the

facts would sustain the charge as it would when there is no negotiated plea. *See State v. Trochinski,* 2002 WI 56, ¶ 43 n.2, 253 Wis. 2d 38, 644 N.W.2d 891 (Abrahamson, C.J., dissenting); *State v. Smith,* 202 Wis. 2d 21, 27, 549 N.W.2d 232 (1996); *Broadie v. State,* 68 Wis. 2d 420, 423–24, 228 N.W.2d 687 (1975); *Wilson v. State,* 57 Wis. 2d 508, 513, 204 N.W.2d 508 (1973).

¶ 134. This case involved extensive negotiations and, despite unwavering testimony from the victim, the State allowed the defendant to enter a plea while disavowing that he was the shooter.

¶ 135. Second, the defendant could have pled "no contest" or entered an *Alford* plea, agreeing to accept a conviction while simultaneously maintaining his innocence. *See* Wis. Stat. § 971.06; *North Carolina v. Alford,* 400 U.S. 25 (1970). When he pled "guilty" with the full concurrence of his attorney, Howell admitted that all the factual elements necessary to sustain a judgment of guilt were true. *See State v. Kelty,* 2006 WI 101, ¶ 30, 294 Wis. 2d 62, 716 N.W.2d 886. A defendant is not precluded from attacking the voluntary and intelligent character of his plea. However, when the basis of the attack is the abbreviated discussion of the facts during the colloquy, a reviewing court must allow reasonable inferences. "Where the trial court has concluded that the evidence did provide a sufficient factual basis to support the plea, this court will not upset these factual findings unless they are contrary to the great weight and clear preponderance of the evidence." *Broadie,* 68 Wis. 2d at 423. When the court evaluates the transcript of the Howell plea colloquy to show that it lacks a factual basis for the plea, it is depending on allegations outside the record. A factual basis for acceptance of a plea exists if an inculpatory inference can reasonably be drawn from the facts, even if an exculpatory inference

could also be drawn and the defendant asserts that the latter inference is the correct inference. *State v. Spears,* 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988).

## V

¶ 136. Howell's motion should be evaluated as a non-*Bangert* or *Bentley*-type motion (*State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 50 (1996)). When the court determines that Howell's motion is a successful *Bangert* motion, it produces serious short term and long term consequences.

¶ 137. In the short term, it shifts the burden of proof to the State. In the long term, it adds a new responsibility for circuit judges in plea colloquies; that is, it directs judges to anticipate and foreclose a defendant's theoretical defenses by asking questions that will rule out those defenses. This will require circuit judges to elicit more facts and more admissions from defendants which, in turn, will take additional time. Some defendants, especially defendants entering no contest pleas, may now be asked questions that they are unwilling to answer forthrightly, in public, on the record.

¶ 138. *Bentley*-type motions for plea withdrawal carry more stringent pleading requirements than *Bangert*-type motions. There are several reasons for this difference. First, *Bentley*-type motions usually depend on facts outside the record. To ask a circuit court to examine facts outside the record in an evidentiary hearing requires a particularized motion with sufficient supporting facts to warrant the undertaking. *Hampton,* 274 Wis. 2d 379, ¶ 61.

¶ 139. Second, *Bentley*-type motions do not shift the burden of proof. The defendant retains the burden of showing a manifest injustice by clear and convincing

410

evidence. *Id.*, ¶¶ 60, 63. Thus, the defendant is required to put his cards on the table by pleading specific details of what he will prove at the hearing and explaining how the proof will add up to manifest injustice. The pleading mirrors the defendant's ultimate burden of proof at the hearing.

¶ 140. Third, a *Bentley*-type motion has the capacity to cover a wide variety of reasons for claiming that the defendant's plea was not knowing, intelligent, and voluntary. A *Bentley*-type motion may well claim that the judge made some error but *not* the type of error that the judge could have avoided by following the plea colloquy's established outline or script. The latter type of error is *Bangert*-type error. A judge who follows the plea colloquy script does not automatically have the means to "virtually eliminate" *Bentley*-type error. *Id.*, ¶ 65.

¶ 141. If one applies this analysis to the present case, it becomes obvious that Howell's motion is a *Bentley*-type motion. The allegations of significance in Howell's motion are consistently based outside the record. For example, Howell's motion states: "3. On June 9, 2004, approximately a month prior to the plea in this case, Mr. Howell's cousin, Joseph Sharp came to court on the jury trial date and indicated that he was the person who shot the victim in this case." Howell points to the June 9, 2004, transcript (which is quoted earlier in this dissent and does not substantiate this allegation) and Attorney Henak's affidavit of what *she believes* Howell would testify. Howell allegedly told Attorney Henak that "Joseph Sharp came to court and confessed to Attorney Backes that he shot the victim."

¶ 142. The Howell motion continued:

4. After June 9, 2004, trial counsel [Backes] and Mr. Howell discussed the case in light of the "party to a

411

crime" addition. Based upon these conversations, Mr.
Howell believed that he was guilty as party to a crime if
he was there and did not prevent it. He believed that
his failure to prevent the shooting was sufficient assis-
tance in the case.

¶ 143. These are classic "outside the record" alle-
gations. There is no record, much less the plea colloquy
record, that supports these allegations. They are text-
book examples requiring *Bentley* analysis and *Bentley*
procedure.

¶ 144. Even if one were to believe that these
allegations were sufficient to warrant an evidentiary
hearing, one should be reluctant to shift the burden of
proof to the State. The State should not be required, on
these facts, to straighten out Howell's many allegations
to prove that Howell's plea was knowing, intelligent,
and voluntary.

¶ 145. In his motion, Howell is saying, in essence,
that: (1) Joseph Sharp, his cousin, is the shooter; (2) his
sister, Kimberly, who drove Sharp to the scene, may be
a party to the crime; (3) Howell's only involvement was
riding along in a car (knowing nothing about an immi-
nent shooting); (4) his attorney led him to believe that
failure to stop Sharp once Howell saw a gun made him
guilty as party to a crime; (5) his attorney agreed to
Howell's plea, even though that attorney had previously
received Sharp's confession to the shooting; and (6) his
attorney repeatedly misrepresented Howell's involve-
ment in getting a gun for the shooting, in the attorney's
argument to the sentencing court. Putting the burden
on the State to sort out this soap opera is likely to
require testimony from Howell's family members, who
may assert constitutional rights against self-
incrimination, and Howell's attorney, Michael Backes.
Howell has not alleged ineffective assistance of counsel,

412

but Howell's motion has overtones of ineffective assistance of counsel. Attorney Backes is in a position to clarify many factual issues raised by Howell's motion. However, in the absence of an explicit ineffective assistance of counsel claim and in view of this court's decision in *State v. Meeks*, 2003 WI 104, 263 Wis. 2d 794, 666 N.W.2d 859, the scope of Attorney Backes's testimony may be the subject of fierce dispute. If Howell's motion were properly assessed as a *Bentley*-type motion, Howell would maintain the burden of proof, and *he* would have to put his attorney and family members in the witness box.

## VI

¶ 146. Milwaukee County Circuit Judge Jean W. DiMotto denied Howell's motion in a prompt, incisive written opinion without an evidentiary hearing. Her ruling is reversed on grounds that Howell was automatically entitled to a hearing because he established *Bangert* violations.

¶ 147. In my view, Judge DiMotto's decision is sound and defensible. However, defending Judge DiMotto's decision raises a new set of issues of what a defendant must plead in a non-*Bangert, Bentley*-type motion to earn an evidentiary hearing, and what latitude a circuit judge has in reviewing the allegations in non-*Bangert, Bentley*-type motions.

¶ 148. In *Nelson v. State*, 54 Wis. 2d 489, 497–98, 195 N.W.2d 629 (1972), the court stated:

> [I]f a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing. However, if the defendant fails to allege sufficient facts in his motion to raise a question

413

of fact, or presents only conclusionary allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing. It is incumbent upon the trial court to form its independent judgment after a review of the record and pleadings and to support its decision by written opinion.

¶ 149. In *Bentley* the court employed all the language in the *Nelson* formulation, but it created a two-part test which necessitated a mixed standard of appellate review. *See Bentley,* 201 Wis. 2d at 309–10. The court said:

If the motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing. Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo.

*Id.* at 310 (citation omitted). The court also uncoupled the last sentence in the *Nelson* test ("It is incumbent upon the trial court to form its independent judgment after a review of the record") and appeared to limit the circuit court's review of the record to "the second prong" where it is permitted to exercise discretion. *Id.* at 310, 318–19.

¶ 150. Two years ago in *State v. Love,* 2005 WI 116, ¶¶ 68–73, 284 Wis. 2d 111, 700 N.W.2d 62 (Prosser, J., dissenting), I tried to explain the internal inconsistency I perceived in the *Bentley* decision. The inconsistency is that the circuit court appears to be powerless to deny a requested evidentiary hearing when there is a properly pleaded motion, even though the circuit court has compelling evidence from the record that key allegations in the motion are not true.

¶ 151. To illustrate, suppose that a defendant enters a plea of guilty to shooting his brother in Milwaukee. The defendant's post-sentencing *Bentley*-type motion to withdraw this plea alleges in rich detail that Osama bin Laden shot his brother, and that bin Laden threatened to kill the defendant's mother if the defendant did not plead guilty to his brother's shooting. If this pleading contains "the five 'w's' and one 'h;' that is, who, what, where, when, why, and how," *see State v. Allen,* 2004 WI 106, ¶ 23, 274 Wis. 2d 568, 682 N.W.2d 433, the circuit court appears to have no discretion to rule: "Yes, Mr. Defendant, if your allegations were true, you would be entitled to a hearing, but based on the record I find that your allegations are not true."[3]

¶ 152. To its credit, the majority opinion corrects this festering problem. *See* majority op., ¶ 77 ("A well-pled complaint may be denied without an evidentiary hearing if the record as a whole conclusively demonstrates that relief is not warranted."). The third paragraph of footnote 51 of the majority opinion reads:

> The *Bentley* court interpreted *Nelson* as follows: "*If the motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing.*" *Bentley,* 201 Wis. 2d at 310, citing *Nelson,* 54 Wis. 2d at 497 (empha-

---

[3] Howell's allegations that Joseph Sharp is the shooter, that Sharp confessed to Howell's attorney, and that Sharp was prepared to testify favorably at Howell's trial, carry the same indicia of reliability as the bin Laden hypothetical. There are no personal affidavits from Howell, or Sharp, or Kimberly, or Backes. There is no assertion that the State takes this stuff seriously and has prosecuted Sharp. There is no evidence that these allegations should be believed in the face of the defendant's statements at the plea colloquy and other material in the record.

sis added). In phrasing the *Nelson* test this way, *Bentley* might be interpreted to make an evidentiary hearing mandatory whenever the motion contains sufficient, nonconclusory facts, even if the record as a whole would demonstrate that the defendant's plea was constitutionally sound. Such an interpretation of *Nelson* and *Bentley*, however, is not correct. The correct interpretation of *Nelson/Bentley* is that an evidentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief, even if the motion alleges sufficient nonconclusory facts.

Majority op., ¶ 77 n. 51.

¶ 153. The majority's clarification of the *Bentley* opinion restores to the circuit court the ability "to form its independent judgment [on a *Bentley* plea withdrawal motion] after a review of the [entire] record and pleadings." *Nelson*, 54 Wis. 2d at 498. The problem here is that if the circuit court, once again, has the ability to review the entire record in evaluating a *Bentley*-type motion to withdraw a plea, there is ample evidence in this record to sustain Judge DiMotto's well written opinion.

## VII

¶ 154. The majority opinion summarizes the facts:

> *On February 8, 2004, Marcus Pearson was shot twice while seated in his vehicle.* The defendant, Andrae D. Howell, along with his sister Kimberly and his cousin Joseph Sharp, had allegedly driven to the scene to find another sister, April, who was dating Pearson. *Pearson alleged that Howell* exited his vehicle, *brandished a rifle, and shot him.*
>
> *The State charged Howell with first degree reckless injury* .... On the date originally set for trial, Sharp

allegedly admitted to Howell's trial counsel that Sharp, not Howell, shot the victim. *Howell's trial counsel requested an adjournment* allegedly in light of this information.

Majority op. ¶¶ 12–13. The underlined statements are supported by sworn testimony or documents from the record. The other statements are simply Howell's version of the "facts." I believe it is a mistake to give credence to Joseph Sharp as the shooter of Marcus Pearson without any sworn evidence to support Howell's accusation.

¶ 155. For these reasons, I respectfully dissent.

¶ 156. I am authorized to state that Justices JON P. WILCOX and PATIENCE DRAKE ROGGENSACK join this dissent.